**Charles HAMPY, Respondent,**

**v.**

**MIDWEST HANGER COMPANY, a Corporation, and Carl F. Painter, Jr., Appellants.**

**No. 23483.**

Kansas City Court of Appeals.

Missouri.

Feb. 4, 1962.

McFarland, Rittman & Krimminger, Kansas City, for appellants.

Gene J. MacElhern, E. E. Thomnson, Ernest H. Fremont, Jr., Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

Plaintiff drove his 1952 Chevrolet Sedan into the rear end of defendant's International tractor-trailer, which was standing in the outside lane of a dual lane highway. The trial resulted in a verdict and judgment awarding plaintiff $15,000 as damages. Defendants have appealed.

Many of the events leading up to this accident are not disputed. It occurred about 1:30 a. m. February 6, 1958, on a cool and clear winter night. The highway pavement and shoulders were dry. The place was the Village of Pleasant Valley, just north of Claycomo in Clay County, Missouri. The exact location was Highway 69, 300 or 400 feet south of its junction with Highway 10. The streets in Claycomo were lighted. Those in Pleasant Valley were not, but there was a blinker light at the junction of Highways 69 and 10. Both cars were

headed generally in a northerly direction. Highway 69 forked a few hundred feet south of the place of collision and continued with four lanes of pavement—two for northbound and two for southbound traffic—and with a median in the center. The northbound pavement was 24 feet wide with a 12 foot shoulder of gravel. There was a cross-over immediately adjacent to the spot of collision. The front end of the Chevrolet hit the rear end of the tractor squarely, both cars being one or two feet right of the center line.

Plaintiff Charles Hampy was 30 years of age, employed as an inspector at the General Motors B. O. P. plant in Kansas City. On the evening in question he had worked from 4:00 p. m. until 12:30 a. m. With a fellow employee Cleo Burton, he started to drive in the Chevrolet to his home near Liberty, Missouri. His brakes were in good order and from the time he left the plant until the accident he drove with his lights on low beam. He had traveled this route many times and was quite familiar with it.

Carl F. Painter, Jr., the defendant operator, was employed by defendant Midwest Hanger Company as a truck driver. At about 12:30 a. m. he left the company dock with a load of coat hangers and was bound for Des Moines and Mason City, Iowa. The load weighed 26,000 pounds. The transport vehicle consisted of a 1957 International truck and tractor-trailer. Mr. Painter did not ordinarily use this particular equipment and he was not fully familiar with the operation of the gas tanks which were three in number—a seat tank and two saddle tanks. Fuel from these tanks was utilized and its flow controlled by means of a hand-operated valve located on the cab floor. Mr. Painter drove into North Kansas City, stopped at a Hudson Oil Company station, took on 30 gallons of gasoline and proceeded on by way of 69 Highway to the place of the accident.

Beyond the evidence just recounted there is some dispute as to just what actually occurred and why. Mr. Painter stated that as he entered upon the divided highway and started up the slight incline there his motor began to sputter, which indicated to him that the seat tank which he was then using, was empty. He reached down and turned the valve which would connect one of the saddle tanks. He said the motor immediately picked up, but an instant later again sputtered and quickly stalled, leaving him standing on the right lane of the northbound dual lane. He stated the engine stalled so quickly that he had no opportunity to pull onto the shoulder. He then picked up his flash light and started to get out but before he was able to do so "there was a screeching and a loud bang" and the accident had happened. He testified that he then got out of the truck and found the Chevrolet wedged under the back end of the trailer. He tried to open the Chevrolet left door, was unable to do so, then tried the right door, which did open. He said he had not had time to set out flares.

It was plaintiff's version and testimony that as he approached the scene he was driving 40 to 45 miles per hour; that he had just met a car coming from the north; that its lights did not blind him, but there was a glare. He said he saw defendant's vehicle an instant later and estimated he was 120 or 130 feet away. He stated that at first he thought the tractor-trailer was moving, but quickly realized it was not; that he immediately put on his brakes and attempted to "veer to the left". However, he declared he was afraid to turn clear to the left lest he turn over and because he thought someone might be standing on the left side of the truck. Plaintiff testified further that no flares were out and the rear end of defendant's vehicle was unlighted. He said that when defendant Painter opened the right door and helped him out that Painter said: "I'm sorry, I run out of gas. I was trying to get the tanks switched over—one tank to the other, and was unfamiliar with the equipment and I had turned off my lights trying to start the motor and I had only been here about five

minutes". Defendant denied making this statement.

State Trooper Oberhelman found skid marks from the Chevrolet for a distance of 30 feet to the point of impact. Plaintiff estimated that he could see a distance of 100 feet with his lights on low beam but said if they had been on high beam he could have seen a distance of 300 feet. The testimony of plaintiff's passenger Mr. Burton was substantially in accord with plaintiff's.

We have not summarized the evidence relating to plaintiff's injuries since no point has been made on appeal as to the amount of recovery. Plaintiff did receive substantial injuries. The transcript in this case contains 712 pages. While much of it concerns plaintiff's injuries and evidence relating to certain jurors which will be discussed later, there was voluminous testimony relating to the question of liability. Depositions of the parties were discussed and gone over again and again. The parties were examined and re-examined, cross-examined and re-cross-examined. Our summary of the facts is by comparison brief and counsel may feel, rightly or wrongly, that we have omitted some details which may seem important and which were probably of value in conducting a complete trial. However, we believe our summary presents the salient and basic facts, both parties' explanations and contentions sufficiently to portray the occurrence and to enable us to determine the fundamental issues posed by the appeal.

■ Defendants' first assignment of error is that the court should have sustained the motion for directed verdict because plaintiff was guilty of contributory negligence as a matter of law. Defendants' Instruction No. 3 submitted contributory negligence to the jury on two points. (1) plaintiff's failure to turn to the left and (2) plaintiff's failure to stop. The verdict was against them under this submission.

■ This court (Rader v. David, Mo. App., 207 S.W.2d 519, 523) defined contributory negligence this way: "Contributory negligence is a want of due care on the part of a plaintiff claiming to have been damaged by the actionable negligence of another, combining and concurring with that negligence, and contributing to the damage as a proximate cause thereof, without which such damage would not have occurred. (Citing cases)".

In Thompson v. Byers Transp. Co., Inc., 362 Mo. 42, 239 S.W.2d 498, 499, 500, plaintiff was driving in fog and ran into defendant's truck which was stopped on the highway. Plaintiff said defendant's truck had no rear lights. Plaintiff, driving 15 to 20 miles per hour, said he would have required 50 feet in which to stop. He first saw defendant's truck 10 feet away. Plaintiff's lights were on dim. The court said:

"The burden of establishing plaintiff's contributory negligence falls upon the defendant unless it be established as a matter of law by plaintiff's evidence. With defendant carrying the burden of proof, plaintiff's contributory negligence most frequently is a fact issue for the jury for the credibility of the witnesses is involved, especially where there is a conflict in the testimony, the same as is defendant's actionable negligence ordinarily a fact issue. Consequently, plaintiff's contributory negligence is for the jury unless reasonable minds can draw only the conclusion that plaintiff was negligent. The whole evidence and all legitimate inferences deducible therefrom are viewed in the light most favorable to plaintiff and taken as true while the evidence and inferences favorable to defendant are disregarded in ruling the issue of contributory negligence as a matter of law.

*    *    *    *    *    *

"In the foregoing circumstances plaintiff's contributory negligence was not established as a matter of law. He was not aware of the presence of defendant's trailer blocking the highway at a place where he had a right to as-

sume the way was clear and he could proceed with safety on his side of the pavement. The situation is distinguishable from defendant's cases wherein automobilists have crashed into a railroad train or cars blocking a highway-railroad grade intersection where they do not have the right to assume the way is clear and are required to anticipate the possible presence of cars blocking the crossing and to act accordingly. (Citing cases.)"

The Supreme Court in Parsons v. Noel et al., Mo., 271 S.W.2d 543, reiterated that the defendant carries the burden of showing plaintiff's contributory negligence, that usually the question is one of fact for the jury especially where there is a conflict in the testimony, that it is for the jury unless reasonable minds can draw only the conclusion that plaintiff was negligent and that all legitimate inferences are viewed in a light most favorable to plaintiff. In this case Parsons drove his car into the rear of defendant's dump truck which was parked on the highway, having "run out of gas". There was evidence plaintiff was driving 60 to 70 miles per hour and the jury might have inferred such speed was failure to exercise the highest degree of care and that plaintiff might have swerved to the left, and missed defendant's truck. The appellate court ruled that while the question was close it was for the jury and affirmed a judgment for plaintiff.

Defendants invite our attention to Lemken v. Brooks Truck Lines, Inc., Mo., 322 S.W.2d 803. There the court cites the Parsons case with approval but also approves a directed verdict for the defendant. One main difference in the two cases as pointed out by the court is that in the Parsons case the truck was parked unlighted on the traveled portion of the highway outside the limits of a city or town and where plaintiff had no reason to anticipate the presence of stationary trucks, whereas in the Lemken case the unlighted trailer was parked at the curb of a city street where vehicles normally park and are expected to be. This case is somewhat akin to those where plaintiff hits a train at a grade crossing, where he not only could see, but where he reasonably should have expected trains to be. Fugate v. St. Louis-San Francisco Ry Co., Mo.App., 348 S.W.2d 718.

The opinion of this court in Van Sickel v. F. M. Stamper Co., Mo.App., 198 S.W.2d 539, referred to by defendants in their brief is different on the facts. There the parked truck was well lighted and plaintiff struck it and was killed while traveling at a high and excessive rate of speed.

We shall not under the facts here rule plaintiff guilty of contributory negligence as a matter of law but rather hold it to be a question for the jury.

■ Appellants complain that plaintiff's main Instruction No. 1 fails to incorporate a finding "that defendant Painter's duty to pull off onto the shoulder did not begin until such time as he was aware, or in the exercise of the highest degree of care, should have been aware that he had encountered mechanical difficulties that would cause his forward progress to cease". The instruction hypothesized the facts fully and required a finding that the stopping on the highway was negligence and was not in the exercise of the highest degree of care. We think the instruction, standing alone, is good. If defendants believed it needed further explanation or clarification on some feature, a defendant instruction on that point should have been offered.

■ Appellant's third point is two-pronged. It assigns as error the refusal to admit the offered expert testimony of police officer Bryce Thompson and asserts the Court erred in personally interrogating Officer Thompson in a hostile manner to the prejudice of defendants before the jury. Officer Thompson said he could determine the "coefficient friction" of an automobile on pavement and was then asked if he could "tell the stopping distance" of an automobile on the particular highway involved in this accident. The Court asked

four questions of the witness: (a) If make, age, weight or load of the vehicle made any difference; (b) if it would make a difference if the brakes locked "uniformly or not uniformly"; (c) if not all wheels locked and (d) if temperature made a difference. The Court's questions were not improper. There is no showing that the manner of the inquiries was hostile. There was no offer of proof or showing as to what the answer would have been. This assignment is ruled against defendants.

■ Appellants complain that plaintiff's counsel in his closing argument told the jury that: "You've got to be negligent yourself before you claim somebody else is contributorily negligent". In response to an objection the Court told the jury to "be governed by the instructions in the case and the evidence, of course". No further protest, objection or suggestion was made by defendants. No reversible error is shown on this point.

■ The fifth and final assignment alleges it was error to deny a new trial because two jurors Louis Stone and Allan Mitchell failed to truthfully answer questions propounded to them on the voir dire examination. Juror Mitchell on voir dire made no response when the question was put if any member of the panel had ever been a plaintiff in a law suit "involving personal injuries to yourself or any member of your family". In truth and in fact when this juror was 19 years old he had been hospitalized for ten days and disabled for six weeks as a result of accidental injuries. A suit for $15,000 had been filed but settled. After the trial the juror said he had forgotten that a suit had been filed. The trial court specifically found that this juror did not intentionally conceal this fact.

Juror Stone was baptized and married in the Catholic church under the name of Mangiaracina. This was his father's name in the "Old Country". However, juror Stone by affidavit says his father was naturalized in 1894 under the name of Antone Stone; that the juror was born November

7, 1903, and has always used the name "Stone" and that his property is carried in the name of "Stone". Juror Stone also on voir dire recalled no personal injury damage suit involving him or his family. However, in 1946, his wife had an automobile collision with a Mr. Walter Wells. The juror's wife under the name of Eula D. Stone filed suit and Wells counterclaimed. The matter was settled without trial. Juror Stone said he had forgotten the incident.

The trial court in overruling defendants' motion for new trial, found specifically: neither jurors Stone nor Mitchell, on voir dire, intentionally concealed the fact they had been involved in prior litigation. Juror Stone has used the name "Stone" and been generally known by that name for fifty years. Neither juror Mitchell nor juror Stone bore any ill will toward defendants, and defendants were not prejudiced by the answers given by them on voir dire.

Appellants have briefed this last assignment under their Supplemental Brief in which they cite two cases: In Girratono v. Kansas City Public Service Co., Mo., 272 S.W.2d 278, the juror identified himself as Ralph Byrd when he had been involved in two lawsuits where he testified his true name was Ralph Wilson. He said he had forgotten about these matters. The trial court did not believe him and granted a new trial. On appeal such action was affirmed. The second case is Triplett v. St. Louis Public Service Co., Mo.App., 343 S. W.2d 670, 672, 673, and the court summarizes many of the pertinent rules on these questions as follows:

> "The principles declared by such authorities are clear and undisputed, and may be concisely restated. The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean the right to a fair and impartial jury. Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S.W.2d 459. A litigant is therefore entitled to a jury composed of twelve impartial persons; for although a civil case may be decided by the vote

of three-fourths of that number, a party has the right to have that decision, whether for or against him, based on the honest deliberations of twelve such individuals. Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711. It is fundamental that a prospective juror is not the judge of his own qualifications. Bass v. Durand, 345 Mo. 870, 136 S.W.2d 988. And to the end that a party may intelligently exercise his challenges, it is the duty of a juror on voir dire examination to fully, fairly and truthfully answer all questions directed to him. Girratono v. Kansas City Public Service Co., Mo., 272 S.W.2d 278. Hence, a juror's intentional concealment of a material fact may require the granting of a new trial. Woodworth v. Kansas City Public Service Co., Mo., 274 S.W.2d 264. For bias and prejudice on the part of a juror may be inferred from his intentional concealment of such information. Girratono v. Kansas City Public Service Co., Mo., 272 S.W.2d 278. But an unintentional failure to disclose information not directly connected with the case does not necessarily show prejudice on the part of the juror so as to call for the trial of the case anew. Davis v. Kansas City Public Service Co., Mo., 233 S.W.2d 679.

"In the final analysis, therefore, the question of what result should follow the failure of a juror to correctly answer a question touching his qualifications depends upon whether or not he was guilty of an intentional concealment. Primarily, the determination of that question must be left to the sound discretion of the trial court. Reich v. Thompson, 346 Mo. 577, 142 S.W.2d 486, 129 A.L.R. 795. Nevertheless, the exercise of such a discretion is subject to judicial review, and if an appellate court concludes from the record that an abuse of discretion unmistakenly appears, it is its duty to reverse the ruling".

Of course jurors' answers on voir dire should not only be the truth but the whole truth. A litigant is entitled to twelve fair and impartial jurors and if misinformation is given even unintentionally or indirectly, it might result in granting a new trial if it was on a pertinent matter and the losing party's cause was prejudiced thereby. Reason and the precedents rule that the answer to this question, involving credibility and at least a quasi-equitable determination, rests primarily with the trial judge, and his discretion, if reasonably exercised, will not be overturned. We are unable to conclude that defendants were prejudiced by the answers given or information withheld by the jurors Mitchell and Stone. The record does not show unmistakably an abuse of discretion as to this point.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court. All concur.