Keith WILLIAMS, By and Through his next friend, Cheryl WILFORD, and Cheryl Wilford, individually, Plaintiffs-Respondents,

v.

BARNES HOSPITAL, Defendant-Appellant.

No. 68957.

Supreme Court of Missouri, En Banc.

July 14, 1987.

Rehearing Denied Sept. 15, 1987.

John C. Shepherd, Kenneth W. Bean, St. Louis, for defendant-appellant.

Stephen H. Ringkamp, James E. Hullverson, St. Louis, for plaintiffs-respondents.

ROBERTSON, Judge.

Appellant Barnes Hospital appeals from a $3,000,000 jury verdict in favor of respondent Keith Williams in an action arising from alleged obstetrical medical malpractice. Keith's claim, and the separate claim of his mother, Cheryl Wilford, was brought on the theory that appellant failed to perform a timely caesarean section to deliver Keith. As a result, Keith suffers disabili-

ties allegedly caused by the asphyxia he sustained prior to vaginal delivery when the umbilical cord wrapped around his neck.

Following the jury's verdict, appellant filed a lengthy, alternative motion for judgment notwithstanding the verdict, a new trial, or remittitur. Among its many points, appellant alleged that it was denied its constitutional right to an impartial panel of twelve jurors because one or more of the veniremen failed to respond truthfully to voir dire questions concerning prior claims and litigation. After a hearing, at which appellant offered the testimony of five jurors to support its contention, the trial court denied appellant's motion for a new trial.

On appeal, appellant assigned nine points of error. The Eastern District Court of Appeals, en banc, affirmed the judgment. We granted transfer to address appellant's second point which alleges that the trial court abused its discretion in denying appellant's motion for a new trial because four members [1] of the jury panel intentionally concealed their involvement in prior litigation. We reverse the judgment of the trial court and remand for a new trial. [2]

## I.

The voir dire examination of the prospective jurors in this case was comprehensive. The members of the panel were subjected individually and collectively to several hundred questions. In particular, the voir dire focused on whether any of the panel had ever been involved in prior litigation.

Respondent's counsel began the inquiry into prior claims and litigation with the following question:

Do—let me ask this. Is there any member of this panel who has—had a lawsuit or a claim brought against him or her? Have any of you folks ever been sued? I'm not talking about domestic relations.

---

1. The post-trial hearing revealed that one of appellant's claims of misconduct relating to Juror Williams was without foundation. Appellant does not pursue its claims as to Juror Williams on appeal.

2. Because of our conclusion with regard to the issue of juror misconduct, we do not consider the remainder of appellant's arguments.

Other than that. I'm talking about something which would involve an injury to you. Have any of you folks ever had a lawsuit or claim brought against you?

Venirewoman Holloman responded that she had filed suit in a personal injury action. Mrs. Holloman also recalled her attorney's name.

Respondent's counsel continued:

Is there anybody else here who has been sued or had a claim brought against him or her, or as Mrs. Holloway [sic] has indicated, have any of you folks ever brought a suit against anyone?

Venireman Bobo then answered that he was involved in a suit.

Following his questioning of Mr. Bobo, respondent's counsel emphasized to the jury panel the importance of answering questions regarding their prior involvement with lawsuits or claims:

Is there anyone else who has ever had a lawsuit or claim brought against him or her or have any of you folks ever brought a lawsuit or a claim against anyone else? And let me enlarge that—the reason we asked this is because there is nothing worse for either side than getting a verdict and having it set aside because somebody forgot to tell us that they had an automobile accident in Austin, Texas, eight years ago and it can be that silly.

Venireman Boaz responded that he had made a claim which was settled without a lawsuit after his wife had been hit by a car that ran a red light. Venirewoman Price also responded that she had settled an auto accident claim. Another juror disclosed that she had filed two personal injury claims.

Later, during his voir dire examination, appellant's counsel asked a series of questions pertaining to prior litigation and claims:

Now, when he asked the question on claims he sort of put it all together and I'd like to separate it if I can. First let

me ask about claims made. That is where you had a claim against another party, whether it be an automobile wreck or whether it be a lawsuit that you fell somewhere, something like that. Now, some of you have already told us about your claims; Workmen's Compensation would be a claim also.

\* \* \* \* \* \*

Do any of the rest of you have claims that you have asserted on your own behalf that have not been told to us so far today?

\* \* \* \* \* \*

Are there any of you that have other personal injuries that you've made claims against some else for either—either through Workmen's Compensation or automobiles, that kind of thing?

In response, several prospective jurors recounted their answers given to respondent's counsel. In addition, Venireman Boaz repeated that his wife was hit by someone and that his claim was settled without a lawsuit.

Finally, appellant's counsel asked whether any of the prospective jurors had claims brought against them:

Let me ask the other side of the coin. How many of you have been in the position that Barnes Hospital is now in, that someone has asserted a claim against you? Are there any of you that have been defendants in an actual lawsuit? I take it by your silence no one has.

The jury returned its verdict in favor of respondent on a 9–3 vote. After the trial, appellant discovered that five members of the jury potentially failed to disclose their involvement with previous claims and lawsuits. At the hearing on appellant's motion for new trial, appellant established that four jurors failed to apprise the court of their earlier experience as parties to litigation. We are concerned with three of those jurors, Brownridge, Holloman and Marshall,[3] all of whom voted in favor of respondent's verdict.

---

**3.** One juror, Mrs. Moore, failed to disclose that she was a party to a divorce action. Her nondisclosure, however, cannot be considered in-

tentional because respondent's counsel specifically excluded domestic relations in his questioning. Appellant's claim as to Mrs. Moore is

## II.

### A.

Initially, respondent argues that appellant failed to preserve the issue of juror misconduct by failing to state with specificity the allegations of misconduct on the part of the jurors in its motion for new trial.

Rule 78.07 provides that "[a]llegations of error occurring or becoming known after final submission to the court or jury shall be specifically set out [in the motion for new trial]." General allegations of error not based upon specific objection or requests made during trial are insufficient to preserve the allegations for review; nor may deficiencies in the motion be supplied from the movant's brief on appeal. *Hartley v. Matejka*, 585 S.W.2d 240, 242 (Mo. App.1979).

In its motion for new trial, appellant alleged that "Defendant was denied its Constitutional rights to an impartial panel of twelve jurors because one or more of the jurors failed to truthfully respond to questions asked during voir dire concerning prior claims, litigation and involvement with Barnes Hospital." At the hearing on the motion, appellant offered the testimony of four jurors. Although these individuals were not specifically identified in the motion, we find, as did the Court of Appeals, that the allegation of error was sufficiently stated to preserve the matter of juror misconduct for review.

### B.

At the cornerstone of our judicial system lies the constitutional right to a fair and impartial jury, composed of twelve qualified jurors. Mo. Const. art. I, sec. 22(a); *Beggs v. Universal C.I.T. Credit Corp.*, 387 S.W.2d 499, 503 (Mo. banc 1965). To this end, "it is the duty of a juror on voir dire examination to fully, fairly and truthfully answer all questions directed to him (and to the panel generally) so that his qualifications may be determined and challenges may be intelligently exercised." *Rickenbaugh v. Chicago, Rock Island &*

*Pacific Railroad Co.*, 446 S.W.2d 623, 626 (Mo.1969).

We recognize both intentional and unintentional nondisclosure of information requested of a potential juror on voir dire. Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable. *Anderson v. Burlington Northern Railroad Co.*, 651 S.W.2d 176, 178 (Mo. App.1983).

Unintentional nondisclosure exists where, for example, the experience forgotten was insignificant or remote in time, *Id.* at 180, or where the venireman reasonably misunderstands the question posed, *Mantz v. Southwest Freight Lines*, 377 S.W.2d 414, 418 (Mo.1964); *Begley v. Adaber Realty & Investment Co.*, 358 S.W.2d 785, 792–93 (Mo.1962); *Hornberger v. St. Louis Public Service Co.*, 353 S.W.2d 635, 642 (Mo.1962); *Barb v. Farmers Ins. Exchange*, 281 S.W.2d 297, 302 (Mo.1955); *Blond v. Overesch*, 527 S.W.2d 663, 669 (Mo.App.1975); *Lindsey v. P.J. Hamill Transfer Co.*, 404 S.W.2d 397, 399 (Mo. App.1966).

The determination of whether concealment is intentional or unintentional is left to the sound discretion of the trial court. Its ruling is disturbed on appeal only upon a showing of abuse of that discretion. *Triplett v. St. Louis Public Service Co.*, 343 S.W.2d 670, 673 (Mo.App.1961).

Whether intentional or unintentional, the concealment of material information on voir dire by a prospective juror deprives both litigants of the opportunity to exercise peremptive challenges or challenges for cause in an intelligent and meaningful manner. Both parties are entitled to unbiased jurors whose experiences, even innocently and reasonably undisclosed, will not prejudice the resolution of the cause.

without merit and deserves no more than foot-   note treatment.

In some contexts, the opportunity for error is so great that a party's right to a fair and impartial jury must be presumed compromised. If a juror intentionally withholds material information requested on voir dire, bias and prejudice are inferred from such concealment. *Rickenbaugh*, 446 S.W.2d at 626; *Beggs*, 387 S.W.2d at 503. For this reason, a finding of intentional concealment has "become tantamount to a per se rule mandating a new trial." *Frenette v. Clarkchester Corp.*, 692 S.W.2d 834, 836 (Mo.App.1985); *Anderson*, 651 S.W.2d at 178.

Unintentional nondisclosure may or may not demand a new trial. It has been uniformly held that an unintentional failure to disclose information not connected with the case or bearing on the prospective juror's ability to fairly evaluate the evidence does not necessarily show prejudice on the part of the juror. *Davis v. Kansas City Public Service Co.*, 233 S.W.2d 679, 685 (Mo.1950); *O'Brien v. Vandalia Bus Lines*, 173 S.W.2d 76, 77 (Mo.1943); *Triplett*, 343 S.W.2d at 673; *Harrison v. St. Louis Public Service Co.*, 251 S.W.2d 348, 351 (Mo. App.1952). Thus, where nondisclosure is found to be both unintentional and reasonable, the relevant inquiry becomes whether, under the circumstances, the juror's presence on the jury did or may have influenced the verdict so as to prejudice the party seeking a new trial. *Hampy v. Midwest Hanger Co.*, 355 S.W.2d 415, 421 (Mo.App. 1962). Prejudice is a determination of fact for the trial court, its finding to be disturbed on appeal only for abuse of discretion.

### C.

With these principles in mind, we first consider Juror Brownridge, who failed to disclose a contract claim she filed against a "guy" who worked on her roof, and Juror Holloman, who failed to disclose two credit card actions brought against her. At the post-trial hearing, Mrs. Brownridge testified that she remembered the questions concerning prior lawsuits during voir dire but had "totally forgotten" about her claim. Although Mrs. Holloman indicated in voir dire that she had sued Ralston Purina as a result of a slip and fall, she explained that the credit card actions did not "dawn" on her because she thought the questions were about "[her] suing someone."

The trial court accepted these explanations. Such acceptance is reasonable when considered in light of the specific voir dire questions asked. Whatever general import these questions could be said to have, the examples used by both counsel during voir dire consistently narrowed the focus of the questions to actions involving personal injuries. The only concrete references given the prospective jurors were actions involving personal injuries, nothing more. It is therefore not surprising that the answers responded to and reflected this focus.

In this context, it is understandable that Juror Holloman would not think of the credit card actions against her but would recall a personal injury claim she maintained against Ralston Purina. Equally understandable is Juror Brownridge's failure to recall her contract claim against a "guy who worked on [her] roof." Nor should it be surprising that both jurors would remember the details of these actions when they were presented questions directed specifically toward the actions at the posttrial hearing. Because we perceive a reasonable inability to comprehend the information solicited by the questions asked on voir dire, we cannot say that the trial court abused its discretion in finding the nondisclosure of these two jurors unintentional.

The trial court did not expressly rule on the question of bias. The burden is on appellant to show the presence of bias when unintentional nondisclosure is present. Juror Brownridge's contract claim is simply not of the sort that would produce bias against a health care provider or a major corporate entity such as appellant.

At oral argument, appellant urged that the present garnishment of Juror Holloman's wages by a major corporation might create a bias against corporate entities generally which appellant is entitled to explore on voir dire. Appellant's argument loses

its force, however, when the record reveals that Holloman recalled a slip and fall claim against Ralston Purina during voir dire. Holloman's disclosure revealed a potentially hostile attitude toward corporations sufficient to alert appellant's counsel to the bias now claimed. Appellant's counsel did not pursue the issue on voir dire; he has shown neither the intentional nondisclosure nor the bias required to mandate a new trial. We find no abuse of discretion in the trial court's rejection of appellant's claims regarding Brownridge and Holloman.

### D.

■ During voir dire, Juror Marshall failed to reveal his involvement in a personal injury action in which he obtained a $1,500 settlement. Mr. Marshall's claim, filed in 1981 and settled in 1982, involved an injury he sustained while operating a fork lift to load a tractor-trailer. The trailer's brakes slipped and the vehicle shoved into the dock. Both Mr. Marshall and the fork lift fell off the dock. Following the accident, Mr. Marshall received treatment for eight to nine weeks for an injury to his back. At the post-trial hearing, Mr. Marshall offered two explanations for his nondisclosure: 1) he didn't think about it during voir dire, and 2) his claim was settled out of court.

Although Mr. Marshall's memory purportedly failed during voir dire, he remembered the specifics of the accident in detail when called after the trial, including the length of his subsequent treatment, the court in which he filed suit, the name of his attorney, and the amount of his settlement. Under these circumstances, Mr. Marshall's explanation that he forgot his personal injury claim "unduly taxes our credulity." *Triplett*, 343 S.W.2d at 675. Marshall's claim was neither insignificant nor remote in time. His failure to answer during voir dire cannot be considered an unintentional nondisclosure. *Frenette*, 692 S.W.2d at 837.

Nor can we consider Mr. Marshall's nondisclosure the product of confusion as to the meaning of the word "claim" as defined by counsel during the voir dire. At the post-trial hearing, Mr. Marshall explained that he did not reveal the claim because it never went to trial. A "claim" even in the barest of layman's language, includes not only a lawsuit but also a claim settled out of court.

Indeed, Mr. Marshall's explanation for his nondisclosure on the basis that his claim was settled pales in light of the other jurors' responses during voir dire. At least three other panelists disclosed claims that were settled out of court. It is unquestionable that Mr. Marshall heard these responses yet he failed to disclose his own settled claim. *See Dalton v. Kansas City Transit, Inc.*, 392 S.W.2d 225, 230 (Mo.1965). As such, Mr. Marshall's nondisclosure was unreasonable under the circumstances. His reckless disregard for his responsibilities as a potential juror are tantamount to intentional concealment.

> Where there exists no reasonable inability to comprehend the information solicited by the question asked of a prospective juror, and where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable, failure to disclose is held intentional.

*Anderson*, 651 S.W.2d at 178. Having found intentional concealment, bias and prejudice must be presumed to have influenced the verdict. *Id.* Our review of the record dictates the conclusion that the trial court abused its discretion in failing to grant a new trial based on Mr. Marshall's testimony at the post-trial hearing.

### III.

Our Constitution guarantees "[t]hat the right of trial by jury ... shall remain inviolate...." Mo. Const. art. I, sec. 22(a). We entrust to our juries the fortunes and futures of all who come before them. This Court has consistently deferred to and placed great confidence in the verdicts of juries, realizing that the jury system remains our brightest hope for achieving justice between litigants.

This Court's efforts to protect the products of juries from judicial invasion led to

the abolition of remittitur in *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99 (Mo. banc 1985). And this Court's concern for the integrity of the processes of juries led us recently to uphold a trial court's order granting a new trial when jurors slept during the presentation of evidence. *Yoon v. Consolidated Freightways, Inc.*, 726 S.W.2d 721 (Mo. banc 1987).

Our confidence in and deference to the findings of juries demands that we assure litigants of the integrity of the jury selection process as well. Such confidence and deference, after all, is justified only where the juries are composed of fair and impartial persons who take their responsibilities both as jurors and potential jurors seriously.

Our concern with the products and processes of juries would be hollow indeed if we were to adopt a cavalier attitude toward the integrity of the very juries whose products and processes we so carefully guard.

Under the circumstances of this case, we are constrained to reverse and order a new trial. We are fully aware that this regrettable situation was not one of respondent's making. We fully appreciate the apparent harshness of the remedy. Yet, as we have said, the fair and impartial operation of the jury is a guarantee to which every litigant rightfully makes claim. Until a better solution is found, we are left with no option but to deal harshly with a venireman's disregard for his responsibilities as a potential juror. Only a new trial will preserve inviolate appellant's constitutional entitlement to a fair and impartial jury.

The judgment of the trial court is reversed and the cause remanded for a new trial.

BLACKMAR, DONNELLY and WELLIVER, JJ., concur.

BILLINGS, C.J., dissents in separate opinion filed and concurs in separate dissenting opinion of HIGGINS, J.

HIGGINS, J., dissents in separate opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of HIGGINS, J.

BILLINGS, Chief Justice, dissenting.

The principal opinion glosses over the broad, vague, and general allegations in the defendant's last (No. 28) ground of error. The opinion recognizes that the "one or more jurors" were not specifically identified. The shotgun averment also fails to specifically state which questions were falsely answered by what juror but avers generally, in blunderbluss fashion, to questions asked "concerning prior claims, litigation and involvement with Barnes Hospital."

By holding this general assignment meets and complies with the specificity requirement of Rule 78.07, the Court assures this allegation of error will now be found in each and every motion for a new trial—and leaving it to post-motion investigation via computers, indexes, and personal interviews, to come up with the specificity called for by Rule 78.07. The rule should be followed or abolished.

As noted by the dissenting opinion of Judge Higgins, the trial court is vested with broad discretion in ruling a charge of jury misconduct; further, that this Court recently refused to substitute its judgment for that of the trial court in what is now known as the "sleeping juror" case and deferred to the judgment of the trial court.

This writer would hold that the matter of alleged jury misconduct was not properly preserved for appellate review and if reviewed that there was no abuse of discretion by the trial court. The judgment of the trial court should be affirmed.

HIGGINS, Judge, dissenting.

The principal opinion, although recognizing that a question of juror misconduct is reserved to the discretion of the trial court, nevertheless reverses the trial court's ruling on its own finding that Juror Marshall was guilty of misconduct.

Appellant contends the trial court abused its discretion in denying defendant's motion for new trial due to juror misconduct dur-

ing voir dire in that four members of the jury panel intentionally concealed their involvement as parties to prior litigation.[1]

The trial court received testimony from four jurors and overruled the motion for new trial, thus finding there was no intentional concealment by any of those four jurors. The only juror in question here is Juror Marshall.

The trial count's finding on intentional concealment was nothing more than a finding of fact on a question peculiarly within the province of the trial court. It is not to be disturbed on appeal if it rests "upon a reasonable foundation in fact and upon competent evidence in the record or within the knowledge of the trial court." *Girratono v. Kansas City Public Service Company*, 272 S.W.2d 278, 281 (Mo.1954).

The voir dire was extensive and comprehensive. It subjected the jurors individually and collectively to questions including whether any jurors had been involved in prior litigation. Juror Marshall's unmentioned claim was for a personal injury sustained while operating a forklift. The claim was filed in 1981; it was settled for $1500 in 1982. At the post-trial hearing, he stated he did not think about this claim during the voir dire. The trial judge chose to believe him and the record provides reasonable support for that belief.

Although Juror Marshall did remember some details of his injury, the incident was vague in his memory; he thought it had been settled in " '74 or '75," not in 1982. He stated he "didn't think about the [claim]" during voir dire. This was consistent with his vague and inaccurate recollection of the settlement date. Neither response is indicative of a sophisticated liar or dissembler. Both responses were considered reasonable by the trial judge who, in his capacity as trier of the facts, observed both the voir dire and post-trial interrogations of the venire and Juror Marshall and thus sat in the superior position to weigh the evidence and adjudge credibility.

As recognized by the Eastern District en banc, both parties have marshalled a number of Missouri cases to support their respective positions. Many Missouri cases are collected and analyzed in the ALR annotation to *Anderson v. Burlington Northern R.R.*, 651 S.W.2d 176 (Mo.App. 1983). 38 ALR 4th 255–332 (1983), *Effect of Juror's False or Erroneous Answer on Voir Dire in Personal Injury or Death Action as to Previous Claims or Actions for Damages by Himself or His Family.* Some of the same cases are cited by the parties to reach opposite conclusions. This seeming incongruity is only facial and is explained by each of these cases being decided upon its own facts and by reasonable persons differing about just what inferences from a given set of facts are reasonable. On the present record, the trial court's finding of no intentional concealment was a reasonable inference, and this Court should defer to that finding.

This Court most recently in *Yoon v. Consolidated Freightways, Inc.*, 726 S.W.2d 721 (Mo. banc 1987), agreed unanimously that the trial court's discretion to grant a new trial was reasonably supported by its observations that several jurors were dozing during the trial. This Court should give no less deference to this trial court's reasonably supported discretion to deny a new trial.

In my opinion, the trial court did not abuse its discretion as charged and the judgment for plaintiff should be affirmed.

---

1. Defendant's presentation to the trial court was that "[d]efendant was denied its constitutional rights to an impartial panel of twelve jurors because one or more of the jurors failed to truthfully respond to questions asked during voir dire concerning prior claims, litigation and involvement with Barnes Hospital."

This allegation is vague and lacks the specificity required by Rule 78.07 to preserve it for review. Relief should be denied for that reason.