Steven SHAFER, Appellant,

v.

James D. SCHUSTER and Alison D. Schuster, Respondents.

No. WD 47955.

Missouri Court of Appeals, Western District.

July 26, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 1994.

G. Spencer Miller, Miller, Dougherty & Modin, Kansas City, for appellant.

Thomas D. Billam, Wallace, Saunders, Austin, Brown and Enochs, Chartered, Kansas City, for respondents.

Before SMART, P.J., and KENNEDY and ULRICH, JJ.

ULRICH, Judge.

Steven Shafer appeals the judgment in the sum of Thirty–Five Thousand Dollars awarded to him, pursuant to jury verdict, for injuries he sustained as a result of an automobile collision on June 28, 1990, at an intersection in Kansas City, Missouri. Mr. Shafer claims two points of error. He contends that the trial court erred in denying his application for an ex parte order allowing the release of addresses of jurors post-verdict, and he claims that the trial court erred in refusing to grant him the new trial because of jury misconduct. The judgment is affirmed.

Steven Shafer was involved in an automobile collision on June 28, 1990, at the intersection of 11th and Holmes in Kansas City. James Schuster was driving the second vehicle involved in the collision, and the jury resolved the issue of who had the green light at the intersection at the time of the collision, assessing one hundred percent of fault against Mr. Schuster. Mr. Shafer testified at trial that his left knee was injured. He experienced prior surgery to his left knee in 1982 to repair the meniscus. Following recovery from the 1982 surgery, Mr. Shafer testified that he experienced no left knee complications through 1989.

Following the accident on June 28, 1990, Mr. Shafer was taken to the North Kansas City Hospital Emergency Room by a co-worker. No manifestation of injury to his left knee was evident, and Mr. Shafer walked into the emergency room of the hospital. After the accident, Mr. Shafer was attended by his regular physician and ultimately referred to an orthopedic surgeon.

The orthopedic surgeon who treated Mr. Shafer diagnosed Mr. Shafer's left knee to have a tear to the anterior cruciate ligament and damage to the medial meniscus. Arthroscopic surgery was performed on Mr. Shafer's left knee to correct the damage to the meniscus, but the anterior cruciate ligament was not repaired during the surgery. The orthopedic surgeon opined that surgery was unnecessary to repair the anterior cruciate ligament. Mr. Shafer wore a brace on his left knee daily. Mr. Shafer complained of discomfort caused by the brace, continued instability to his left knee, and he was referred to other orthopedic surgeons. Reconstructive surgery was performed on the anterior cruciate ligament in Mr. Shafer's left knee. Following surgery, physical therapy was commenced and continued until September 11, 1991. Following physical therapy, Mr. Shafer was released by the orthopedic surgeon who had performed the surgery. However, Mr. Shafer complained at trial of continuing difficulties with his left knee. He continued to experience pain, instability when performing certain activities, such as squatting, kneeling, and standing on ladders, or when standing for extended lengths of time. He testified that his knee continued to swell, and he experienced problems with his left knee adversely affecting his recreational time activities.

After physical therapy was concluded, Mr. Shafer obtained employment with the Missouri Highway Department. The application that he completed to obtain employment with the Highway Department reflected his comments that he experienced no impairment that would negatively affect his ability to perform his duties. However, after obtaining employment, he determined that his left knee impairment restricted his work perfor-

mance. Mr. Shafer was not employed at the time of trial.

Mr. Shafer had incurred medical expense to the sum of $21,424.17 at the time of trial. Additional surgery to remove a screw in his left knee implanted when the anterior cruciate ligament was repaired may be required to alleviate some discomfort. The cost of the surgery would be approximately $2,100. Mr. Shafer intends to have the screw removed.

At the trial, an orthopedic surgeon testified by videotaped deposition in behalf of Mr. Shafer. The expert witness stated that the cause of the tear to the interior cruciate ligament of Mr. Shafer's left knee was the automobile accident and that the medical treatment Mr. Shafer received after the accident was medically necessary. The expert testified to the procedure experienced by Mr. Shafer to repair the anterior cruciate ligament in his left knee. The continued pain experienced by Mr. Shafer was related to the presence of the screw in his left knee, and the expert further testified that Mr. Shafer will continue to experience some pain and permanent impairment caused by the automobile accident. The expert testified that the medical bills incurred for treatment were reasonable.

Following the verdict awarding Thirty-Five Thousand Dollars to Mr. Shafer, his counsel filed a motion for an ex parte order allowing the release of addresses of jurors. The court denied the motion. Mr. Shafer's counsel also filed a motion for a new trial alleging juror misconduct because jurors Gerald Johnson and Anthony S. Johnson failed to disclose prior involvement in law suits in response to questions propounded to them during voir dire.

The trial court conducted an evidentiary hearing regarding Mr. Shafer's post-verdict motion. Both jurors Gerald Johnson and Anthony S. Johnson testified during the hearing. Both jurors had signed the verdict form.

Juror Gerald Johnson testified that he had been a defendant in a personal injury lawsuit that resulted from an automobile collision in which he was involved. The suit had been filed against Gerald Johnson in 1983. Mr.

Gerald Johnson testified that he had forgotten about the suit when he did not inform the court and counsel of the lawsuit during voir dire.

Juror Anthony S. Johnson testified during the evidentiary hearing that he had been a defendant in three separate lawsuits. One of the lawsuits had resulted from an automobile collision in which he was involved, and the plaintiff had alleged personal injury as a result of the collision. The second lawsuit resulted in garnishment of his wages while he was employed at the Lake City Arsenal in Jackson County. The third lawsuit named him as a defendant on a note and was filed against him in 1986. Mr. Anthony S. Johnson stated that he had responded to the question about being sued during voir dire by mentioning the case involving the automobile collision, and he stated that he had not recalled the other two cases in response to the question during voir dire.

The trial court found that neither juror had intentionally concealed information disclosed at the post-trial hearing. Mr. Shafer's motion for a new trial, or in the alternative for additur was denied.

I

■ Mr. Shafer's first point on appeal contends that the trial court erred in denying his application for an ex parte order allowing the release of the addresses of jurors following the verdict. Mr. Shafer contends that to insure litigants a fair trial, the court must provide counsel addresses of members of the jury for post-trial investigation to determine improper bias.

■ The standard of review in this situation is whether the trial court abused its discretion. *Williams v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). Mr. Shafer cannot demonstrate any reason for desiring to interrogate the rest of the jury except for the reasoning that because two jurors had not disclosed prior involvements in lawsuits, perhaps a "fishing expedition" with the rest of the jury might uncover other bias or non-disclosure. Mr. Shafer did not demonstrate any facts that may have indicated impropriety by the remainder of the jury. Therefore,

Mr. Shafer, by implication, proposes that the trial court lacks authority to deny disclosure of jurors addresses post-trial. Whether trial courts must disclose jurors' addresses post-verdict has not been specifically determined in Missouri.

The trial court stated that "as a general rule" it was "a very bad public policy" to allow jurors, after having been "take[en] out of their everyday lives by force, [stuck] in a jury box, [paid] the magnificent sum of six dollars a day, frequently cost[ing] them a lot of money because they can't perform their normal daily tasks, and then to have them harassed by counsel after the case is over."

Mr. Shafer did not cite any law to support his proposition that the court erred in not providing the jurors' addresses but rather relied on "fundamental fairness and the constitutionally guaranteed right to a fair trial [to] dictate that the addresses should have been provided." Mr. Shafer's logic makes a great leap by declaring that constitutional entitlement to a fair trial compels the trial court to disclose juror addresses post-trial. At worst, the trial court's refusal to disclose juror addresses inconvenienced Mr. Shafer's post-verdict exploration. Investigation of numerous available data sources and records of modern society are available to inquiries, and the jurors appeared as members of the venire because their names and addresses were a part of certain of these. Although the trial court expressed concern about post-trial contact with jurors, the trial court did not preclude contact by trial counsel with jurors after the verdict, and that issue is not addressed.

Mr. Shafer did not show that the trial court abused its discretion in denying the motion to provide the list of jurors' addresses. Mr. Shafer's point one is denied.

## II

■ As his second point on appeal, Mr. Shafer avers the trial court erred by failing to grant a new trial because two jurors failed to disclose their prior involvement in lawsuits. Two jurors, Mr. Anthony Johnson and Mr. Gerald Johnson, testified at a post-trial hearing concerning their nondisclosure. The transcript of the voir dire proceedings reveal that Mr. Anthony Johnson, during voir dire, had revealed his involvement in a rear-end accident which settled without going to trial. Mr. Anthony Johnson had also been a defendant in two other lawsuits. Neither had been a personal injury case. During the post-trial hearing Mr. Anthony Johnson testified that he raised his hand during voir dire when the panel, subsequent to the question about the accident, was asked if anyone had been a defendant in a lawsuit. Counsel either did not see his raised hand or ignored the raised hand.

■ In a hearing of this nature, the trial court's responsibilities include weighing the credibility of juror Anthony Johnson. The trial court is in the best position to determine witness credibility. *Shannon v. Welch*, 858 S.W.2d 748, 751 (Mo.App.1993). The trial court believed Mr. Anthony Johnson's testimony. The court did not err in denying the motion for a new trial on account of juror Anthony Johnson.

Mr. Gerald Johnson testified that during the voir dire in February 1993, he did not remember he had been named as a defendant in a personal injury lawsuit arising out of an automobile collision. That case was filed in 1983. Mr. Gerald Johnson's insurance company negotiated the case, and it did not go to trial. Mr. Gerald Johnson, however, did indicate in response to questioning during voir dire that he had previously been deposed. Mr. Shafer's counsel did not ask any follow up questions to determine why he had been deposed. Follow up questions may have reminded Mr. Gerald Johnson of the lawsuit.

■ In Missouri, the courts have recognized two categories of juror nondisclosure, intentional and unintentional. *Williams v. Barnes Hosp.*, 736 S.W.2d at 36. "Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable." *Id.* Unintentional nondisclosure exists where, for example, the experience forgotten was insignificant or re-

mote in time, or where the venireman reasonably misunderstands the question posed. *Id.*

In the case of intentional nondisclosure bias and prejudice are inferred from the concealment and a new trial is required. *Id.* In the case of unintentional nondisclosure a new trial is appropriate only if the party has been prejudiced. *Id.* The determination of whether concealment is intentional or unintentional is left to the sound discretion of the trial court. Its ruling is disturbed on appeal only upon a showing of abuse of that discretion. *Id.* Whether intentional or unintentional, the concealment of material information on voir dire by a prospective juror deprives both litigants of the opportunity to exercise preemptive challenges or challenges for cause in an intelligent and meaningful manner. *Id.* Both parties are entitled to unbiased jurors whose experiences, even innocently and reasonably undisclosed, will not prejudice the resolution of the cause. *Id.* Prejudice is a determination of fact for the trial court, its finding to be disturbed on appeal only for abuse of discretion. *Id.*

Mr. Gerald Johnson, referring to the nondisclosed lawsuit, stated he had "forgotten it, it had really been so long ago. It never went to court and I just really had never even ... recall[ed] it as being a law suit." The trial court determined that Mr. Gerald Johnson's nondisclosure was unintentional. Considering the nature of the lawsuit filed against Mr. Gerald Johnson in 1983 and its apparent untroubled resolution, the format of the questions at voir dire, and Mr. Gerald Johnson's answers at the post-trial hearing, the trial court did not abuse its discretion in finding that Mr. Gerald Johnson's nondisclosure was unintentional and not prejudicial to Mr. Shafer. Point two is denied.

The trial court did not err in denying Mr. Shafer's motion for new trial.

The judgment of the trial court is affirmed.

All concur.