

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | |
|---|---|
| THADDEUS THOMAS, a Minor, by and through his Next Friend, Marlin Thomas, and MARLIN THOMAS and MA SHERYLL JOY THOMAS, Individually, ) ) ) ) ) | No. ED103338 |
| Appellants, ) | Appeal from the Circuit Court of Franklin County, Missouri |
| vs. ) | 13AB-CC00063 |
| ) | |
| MERCY HOSPITALS EAST COMMUNITIES, d/b/a MERCY HOSPITAL – WASHINGTON, and MERCY CLINIC EAST COMMUNITIES, ) ) ) | Honorable Gael D. Wood |
| ) | Filed: September 13, 2016 |
| Respondents. ) | |

## OPINION

In this medical malpractice action, Appellants appeal the judgment entered by the trial court in favor of Mercy Hospitals East Communities, d/b/a Mercy Hospital – Washington, and Mercy Clinic East Communities (collectively, "Mercy") following a jury trial. Appellants contend that the trial court abused its discretion by failing to strike for cause Venireperson 24 ("Venireperson") after she expressed during voir dire a disqualifying bias in favor of Mercy: that she would "start off slightly in favor" of Mercy in this case because her sister was a registered nurse at another Mercy facility. Since Venireperson served on the jury in this case, we reverse and remand for a new trial because we find that Venireperson's stated bias disqualified her from jury service on this case and she was not subsequently rehabilitated.

## Factual and Procedural Background

This case stems from allegations that the respondent health care providers were negligent in connection with the Caesarean-section delivery of Thaddeus Thomas resulting in brain damage to the newborn. The case proceeded to trial on March 16, 2015, and the jury returned a verdict for Mercy on March 26, 2015. Appellants' only point on appeal asserts that the trial court committed reversible error when it denied Appellants' motion to strike Venireperson, who was later seated as a juror and took part in the verdict in this case. Appellants moved for a new trial, challenging the trial court's denial of the motion to strike Venireperson. The court denied that motion, and this appeal follows.

## Standard of Review

We reverse the trial court's ruling on a challenge for cause if it is clearly against the evidence and is a clear abuse of discretion. *See Joy v. Morrison*, 254 S.W.3d 885, 888 (Mo.banc 2008). And where a venireperson or juror clearly demonstrates a possible bias and is not thereafter rehabilitated by counsel, the trial court's failure to strike the venireperson or juror undercuts any basis for the court's exercise of discretion and constitutes reversible error. *Hudson v. Behring*, 261 S.W.3d 621, 624 (Mo.App.E.D. 2008) (holding that where a juror clearly indicated a possible bias, the trial court unquestionably abused its discretion by failing to excuse the juror); *cf. Morrison*, 254 S.W.3d at 891 (finding that where a venireperson or juror equivocates about his or her ability to be fair and impartial, "failure by [the] trial judge to question independently a potential juror to explore possible prejudice may undercut any basis for [the] trial judge's exercise of discretion and constitute reversible error").

2

## Discussion

It is axiomatic that in Missouri civil litigants have a constitutional right to a fair and impartial jury of twelve qualified jurors. MO. CONST. art. I, § 22(a); *Williams By & Through Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo.banc 1987). Litigants are entitled to unbiased jurors whose experiences will not prejudice the resolution of the case. *Hudson*, 261 S.W.3d at 624 (citing *Williams By & Through Wilford*, 736 S.W.2d at 36). It is essential that a competent juror be in a position to enter the jury box disinterested and with an open mind, free from bias or prejudice. *Id.* (citing *Catlett v. Ill. C.G.R. Co.*, 793 S.W.2d 351, 353 (Mo.banc 1990)). Even though three-fourths of the jury can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified jurors. *Id.* (citing *Piehler v. Kansas City Pub. Serv. Co.*, 211 S.W.2d 459, 463 (Mo.banc 1948)).

To secure the right to an unbiased jury, § 494.470[1] provides in pertinent part:

1. ... [N]o person who has formed or expressed an opinion concerning the matter or any material fact in controversy in any case that may influence the judgment of such person ... shall be sworn as a juror in the same cause.

2. Persons whose opinions or beliefs preclude them from following the law as declared by the court in instructions are ineligible to serve as jurors on that case.

The difference between subsections 1 and 2 is that the first precludes from jury service any person who has "formed or expressed an opinion concerning [specifically] the *matter* or any *material fact in controversy*" that *may* influence her judgment, while the second bars from such service any person who is manifestly *unable to follow the court's instructions* due to her *"opinions or beliefs"*

---

[1] All statutory references are to RSMo 2012 unless otherwise indicated.

about potentially much broader issues. *See Morrison*, 254 S.W.3d at 889 (explaining the difference between the two subsections).

Here, Appellants assert that the venireperson in question should have been struck under subsection 1 of § 494.470 for demonstrating a disqualifying bias—for expressing during voir dire an opinion concerning the case that posed at least some risk of influencing her judgment as a juror. We agree.

At the beginning of voir dire, Appellants' counsel noted that this case "involves Mercy Clinics, Mercy Clinic Physicians, . . . and Mercy Clinic Hospital" as defendants. Counsel then asked the pool of prospective jurors, "Just knowing that they are defendants in this case, is there anyone that feels they might start off the case a little bit more in favor of one party or the other?" Venireperson raised her hand. The following exchange between Venireperson ("V") and Appellants' counsel ("C") ensued:

> V: My sister works at the Big St. John's. She's an R.N. Are they affiliated?
> C: Sorry?
> V: Is Big St. John's and this hospital affiliated?
> C: Probably—well, you called it St. John's, and I used to call them St. John's because I grew up in Missouri. But I think—I would—
> V: It's Mercy.
> C: Yeah, that's it, right.
> V: But it used to be called St. John's, so...
> C: Right. And you will—the child was eventually transferred to Mercy, Big Mercy as you called it, at some point.
> V: That's what they call it.
> C: Okay. So the same question, because you know people there, know—have some knowledge of that and a relationship with that organization indirectly, would you tend to give them more credibility or that defendant maybe, in this case the local one, start off—
> V: I don't think so.
> C: Okay. I think I hear where you're going with this, but as a lawyer, I have to try to make sure things are clear. You say you don't think so, but later on you did decide you were—they started off a step in advance, that would be—
> V: Well, I've heard my sister have lots of opinions of St. John's so, you know.

4

C: So ultimately, can you sit through this whole case without starting off a little bit in favor of Mercy or St. John's, as you call them, or would you start off with them having a touch in favor of them?

V: I don't—maybe—yeah, probably.

C: Maybe you would be slightly in favor of them?

V: Yep, probably.

C: Okay. And, you know, that's—that's all I'm trying to get is the best answer you can give, and you seem confident in that answer; is that correct?

V: Uh-huh.

C: Okay. Thank you.

At the conclusion of this questioning, Mercy's counsel approached the bench and, out of the hearing of the venire panel, made the following argument:

> [N]one of [Appellants' counsel's] questions have yet gotten to the point of whether [the venirepersons] are biased and prejudiced and won't put aside their friendship with these people and listen fairly and impartially to the evidence and follow your instructions. So [Appellants' counsel] keeps asking, do they think they'll start out ahead. Sure, I think I start out ahead, but it doesn't mean that I—ahead when I sit in the jury box. So I'm just warning [Appellants' counsel] that that's going to be my position when we get to the end of this. That is not the ultimate question. The ultimate question is whether their feelings are going to prejudice the way they sit and listen to the evidence and follow the court's instructions.

The trial court, after hearing argument by Appellants' counsel, as well, concluded, "Well, I think [Mercy's counsel] can attempt to rehabilitate on his voir dire, and we'll see where we are."

Before any attempt at rehabilitation could begin, however, Appellants' counsel again questioned Venireperson:

C: So just to be clear, I've asked you about if you'd tend to start out maybe just a little bit, even just a touch, in favor of one side or the other. I haven't asked you the other question, which is: If the judge gives you an instruction, will you read that instruction and follow that instruction to the best of your ability?

V: Yes.

C: Okay. It doesn't change where you are in your past experiences as far as knowledge and understanding of your relationship to the defendant; is that also fair?

V: Yes.

The questioning of Venireperson then discontinued until Mercy's counsel attempted to rehabilitate her.

5

In Venireperson's answers to questioning by Appellant's counsel, we find at least one clear expression of disqualifying bias: Venireperson's statement that she would be—at least probably, albeit slightly—in favor of Mercy in this case. Venireperson thus clearly stated an opinion concerning the case that had at least some possibility of influencing her judgment as a juror; she essentially admitted that more likely than not she would hear the case with an advantage to the defense built into her view of the evidence. A venireperson hardly needs to be more specific about her bias to raise questions about her qualifications to serve as a juror, since a bias that the venireperson admits by stating generally that her view of the case will be colored by something other than the case's record evidence immediately casts a shadow of doubt over her ability to decide the case solely on the basis of the evidence presented and to follow the law as declared by the court in its instructions. *See White v. State*, 290 S.W.3d 162, 166 (Mo.App.E.D. 2009) ("Where a venireperson's answer suggests a *possibility* of bias, that person is *not* qualified to serve as a juror unless, upon further questioning, he or she is rehabilitated by giving unequivocal assurances of impartiality.") (emphasis added).

Of course, this shadow of doubt regarding a venireperson's qualifications may be lifted by rehabilitating the venireperson. But a venireperson who expresses an opinion about the case that may influence her judgment may be rehabilitated only if the rehabilitation is responsive to and addresses her indication of partiality—i.e., only if it provides a clear, unequivocal assurance that the venireperson would not be partial as a juror. *Id.* Thus, to ensure impartiality where a venireperson's answer suggests bias, follow-up questions designed to elicit unequivocal assurances of impartiality must be asked. *Id.* (citing *James v. State*, 222 S.W.3d 302, 305 (Mo.App.W.D. 2007)).

6

Appellants argue that Mercy's counsel's attempts to rehabilitate Venireperson failed because they did not establish that she *would* be fair and impartial—just that she would "do her level best" to follow the trial court's instructions and decide the case based solely on the record evidence, and not on her pre-existing knowledge of or past experiences with Mercy. Appellants contend that Mercy's counsel's attempted rehabilitation was made up entirely of the sorts of questions that did not address Venireperson's indication of partiality in the specific manner required to provide a clear, unequivocal assurance of her impartiality in this matter. We agree.

Here, Mercy's counsel's attempts to rehabilitate fell short. During Mercy's counsel's voir dire, he first probed for more information about Venireperson's sister's role as a registered nurse at a Mercy facility. Venireperson stated that her sister had worked there for 25 years, in the ICU burn unit. Counsel then posed the question that Mercy now claims rehabilitated Venireperson:

> You said you may be unfair, but then you told us you would follow the instructions.
> So here's the question: Your sister's a nurse, there are claims against nurses here.
> Can you put that aside and assure the Court that you will do your level best currently
> to decide this case based on what you hear in this courtroom, not what your sister
> has told you, not anything about Mercy, just on the evidence from that box and the
> judge's instructions?

Venireperson responded, "Yes. I've heard good and bad. I've heard both."

However, considering the totality of the circumstances here, Venireperson's affirmative response to this question did not provide clear, unequivocal assurance of her impartiality in this case. Mercy's counsel's question did not, as Appellants point out, establish that Venireperson would be fair and impartial. Instead, it sought assurance merely that Venireperson would "do [her] level best" to follow the court's instructions and decide the case based solely on the evidence. Without any indication in the record that Venireperson's "best" would be sufficient to set aside her clear prior indications of partiality, we cannot conclude that her affirmative answer to this question rehabilitated her.

7

Even where a venireperson expressly claims the ability to be "fair and impartial," if the venireperson has also clearly expressed bias, the mere invocation of magic words that the juror can be "fair and impartial" does not permit the venireperson to serve as a juror because "a venireperson should not be allowed to judge his [or her] own qualification to serve as a juror." *Hudson*, 261 S.W.3d at 624; see also *Ray v. Gream*, 860 S.W.2d 325, 333-34 (Mo.banc 1993) ("It is proper to examine a juror as to the nature, character, and cause of his prejudice or bias, but it is not proper to permit the juror, who admits the existence in his mind of such prejudice or bias, to determine whether or not he can or cannot, under his oath, render an impartial verdict. Such a course permits the juror to be the judge of his qualifications, instead of requiring the court to pass upon them as questions of fact.").

Here, Mercy's counsel failed to examine Venireperson as to the nature, character, and cause of her bias. Instead, counsel elicited the bare commitment from Venireperson that she would simply do her "level best." Mercy's counsel did not ask any of the sorts of questions that might, by probing the specific details of the nature, character, or cause of Venireperson's bias, reveal that she was confused and mistaken when she concluded that she would probably favor Mercy, and that might result in her choosing to recant her prior statements of bias. Mercy's counsel did not ever, for example, ask why Venireperson had stated that she would probably favor Mercy, or even what that meant to her—two questions that might have compelled her to divulge the specific reasons for her responses to questioning by Appellants' counsel, and to clarify whether she meant to communicate that she was biased.

Consequently, Mercy's counsel failed to rehabilitate Venireperson, and it fell to the trial court to strike Venireperson for clearly indicating a possible bias, otherwise Venireperson would

8

be permitted to be the judge of her own qualifications. Because the court did not do so, we find that it committed reversible error. Point granted.

## Conclusion

For the reasons stated above, we reverse the judgment of the trial court and remand for a new trial.

James M. Dowd, Presiding Judge

Kurt S. Odenwald, J., and
Gary M. Gaertner, Jr., J., concur.

9