Sheila Rene BRINES, By and Through
Her Next Friend Roxana Kim
HARLAN, Appellant,

v.

Gerhard W. CIBIS, M.D.,
et al., Respondents.

No. 76592.

Supreme Court of Missouri,
En Banc.

Aug. 15, 1994.

Rehearing Denied Sept. 20, 1994.

Gary C. Robb, Kansas City, for appellant.

William L. Yocum, Kansas City, for respondents.

LIMBAUGH, Judge.

This appeal arises from an action brought on behalf of Sheila Brines, a minor, against Gerhard Cibis, M.D., and King Lee, M.D., for alleged negligence in the care and treatment of Brines' congenital glaucoma. A jury returned a defendant's verdict by a 9–3 vote, and the trial court entered judgment accordingly. Brines appealed to the Court of Appeals, Western District; thereafter, this Court granted transfer. The judgment is reversed.

Brines argues that the trial court erred in overruling her motion for a new trial because a juror who voted in favor of the defendants intentionally failed to disclose at voir dire that he had been sued on eight previous occasions. *Williams v. Barnes Hospital,* 736 S.W.2d 33 (Mo. banc 1987), states Missouri's test to distinguish between intentional and unintentional nondisclosure:

> Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable. (Citations omitted.)

> Unintentional nondisclosure exists where, for example, the experience forgotten was insignificant or remote in time, ... or where the venireman reasonably misunderstands the question posed, .... (Citations omitted.)

*Id.* at 36.

■ Nondisclosure, whether intentional or unintentional, can occur only after a clear question is asked on voir dire. *Wingate v. Lester E. Cox Medical Center,* 853 S.W.2d 912, 916 (Mo. banc 1993). During jury selection, the trial judge asked: "Do we have anyone on the [jury] panel who is now or has been a defendant in a lawsuit?" This question unequivocally triggered the prospective jurors' duty to disclose previous lawsuits against them. The juror in question remained silent even though he had been a defendant in eight lawsuits. His silence establishes nondisclosure.

■ Whether the nondisclosure was intentional or nonintentional is more problematic. At the post-trial proceeding on the motion for a new trial, the juror acknowledged that he had been sued eight times and that on each occasion he received a personal summons. All of the lawsuits were filed within the previous six years. Seven of the eight lawsuits were brought by doctors to collect for medical services; the other was brought by an insurance company claiming damages due to an automobile accident in which the juror was involved. When the juror was asked, "And at that time [jury selection] ... you knew that you had been a defendant in at least the eight lawsuits that we discussed, correct?", the juror responded, "I knew that I had been sued by doctors, yes." When asked to explain his silence, the juror testified, "It just didn't click"; "It just didn't connect"; the prior lawsuits simply did not "pop into" his head.

■ After the post-trial proceeding, the trial judge entered the following findings: "Upon the whole of the circumstances, the court finds [the juror's] explanation for nondisclosure of the several collection lawsuits to be honest, cogent and reasonable and accordingly concludes that said non-disclosure was unintentional." These findings are given great weight and will not be disturbed on appeal unless the trial court abused its discretion. *Anglim v. Missouri Pacific R.R.,* 832 S.W.2d 298, 306 (Mo. banc 1992). In this case, however, the evidence did not support the trial court's findings. Given that the juror understood that he was being asked to reveal any lawsuits against him, that all the lawsuits were of recent vintage, and that he actually recalled the lawsuits, the explanation for his silence was unreasonable. Therefore, the trial court abused its discretion in finding unintentional nondisclosure.

■ Citing several Court of Appeals opinions, Doctors Cibis and Lee argue that "[if] a party fails to prove prejudice, a new trial is not warranted, regardless of whether the juror's nondisclosure is intentional or unintentional." *See Alexander v. F.W. Woolworth*, 788 S.W.2d 763 (Mo.App.1990); *Washburn v. Medical Care Group*, 803 S.W.2d 77 (Mo.App.1990); and *Beeks v. Hierholzer*, 831 S.W.2d 261 (Mo.App.1992). In *Williams*, however, this Court rejected a requirement that a party prove prejudice if the intentional nondisclosure involved a material issue. "Having found intentional concealment, bias and prejudice must be presumed to have influenced the verdict." *Williams*, 736 S.W.2d at 38. Noting the importance of full juror disclosure, this Court held that "[i]f a juror intentionally withholds material information requested on voir dire, bias and prejudice are inferred from such concealment. For this reason, a finding of intentional concealment has 'become tantamount to a per se rule mandating a new trial.'" (Citations omitted.) *Id.* at 37. Only where a juror's intentional nondisclosure does not involve a material issue, or where the nondisclosure is *unintentional*, should the trial court inquire into prejudice. *Id.* at 37. To the extent that *Alexander, Washburn,* and *Beeks* hold otherwise, they are overruled.

■ Although none of the parties expressly address the materiality aspect of the intentional nondisclosure, questions and answers pertaining to a prospective juror's prior litigation experience are material. The fact that a prospective juror has been sued as a defendant or has prosecuted cases as a plaintiff may cause the juror to be predisposed to *defendants or to plaintiffs, as the case may* be. The possibility of that predisposition makes the questions and answers material.

■ Finally, Doctors Cibis and Lee contend that Brines should be barred from claiming juror nondisclosure because Brines did not exercise "due diligence" in discovering the nondisclosure. Specifically, they argue that "by using due diligence, [Brines] could have learned well before the jury began its deliberations that [the juror] had been sued." If the juror were then challenged and removed, the need for a new trial could have been avoided.

This "due diligence" proposal, as we perceive it, is designed to prevent "sandbagging" so that litigants cannot reserve objections to errors that are curable during trial. This Court, however, has already fashioned a rule that adequately addresses that concern. A litigant who is privy to information regarding a prospective juror's false answer or nondisclosure waives any right to complain after trial by failing to challenge the juror when the information was obtained. *Cook v. Kansas City*, 358 Mo. 296, 214 S.W.2d 430, 433 (1948). This rule does not, however, require that a litigant investigate whether the prospective jurors have answered the questions truthfully unless the litigant had some indication that the answer was false. *See* Jay M. Zitter, *Effect of Juror's False or Erroneous Answer on Voir Dire Regarding Previous Claims or Actions Against Himself or His Family*, 66 A.L.R.4th 509 (1988) (compiling cases where attorney having reason to believe that jurors' answers were false had duty to investigate). Although this Court wrote of a "due diligence" requirement in *Woodworth v. Kansas City Public Service Co.*, 274 S.W.2d 264 (Mo.1955), it actually rejected a duty to investigate prospective juror's answers. The "due diligence" referred to in *Woodworth* is that required of litigants who actually know of the juror's nondisclosure or false answers. In our view, the delays and logistical difficulties in imposing a duty to investigate every juror's answers outweigh the benefits derived from that duty. The requirement that litigants challenge jurors when the nondisclosure becomes apparent is sufficient to prevent abuse.

To summarize, the failure to disclose eight prior lawsuits was intentional nondisclosure on a material issue. Heeding the *Williams* mandate, we reverse the judgment of the trial court and remand for new trial.

BENTON, THOMAS, PRICE and ROBERTSON, JJ., concur.

HOLSTEIN, J., dissents in separate opinion filed.

COVINGTON, C.J., concurs in opinion of HOLSTEIN, J.

HOLSTEIN, Judge, dissenting.

I respectfully dissent.

In the post-trial hearing, Mr. Oldham acknowledged he did not mention seven prior collection suits against him and did not disclose an insurance company's claim against him. He testified he didn't forget them, and "it ain't that I just didn't want to say anything," but "it just didn't click," "it just didn't connect." As to the insurance company claim, he remembered he "was there to set up arrangements to pay the lady I hit and for the not having insurance." In the collection cases, his checks were garnished. The garnishments appeared to be part of the bill collection process for certain medical bills. In none of the collection cases did he appear in court, and in no case did he appear before a jury. He did not contest any of the claims, retain an attorney, or otherwise defend the actions.

The determination of whether the nondisclosure was intentional or unintentional lies within the sound discretion of the trial court. *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). The trial court found Mr. Oldham's nondisclosure was unintentional. That finding should not be disturbed here as long as it has a "reasonable foundation in fact" and rests upon "competent evidence in the record or within the knowledge of the trial court." *Williams* at 40 (Higgins, J., dissenting). That factual determination should be affirmed absent a showing of an abuse of discretion. This Court defined abuse of discretion as:

> Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*Wingate v. Lester E. Cox Medical Center*, 853 S.W.2d 912, 917 (Mo. banc 1993). The duty to disclose information arises only after a clear question has been asked on *voir dire*. *Wingate* at 916.

In this case, the trial court believed Mr. Oldham's reason for not responding to the question, "Do we have anyone on the panel who is now or has been a defendant in a lawsuit?" I cannot conclude that such belief is so unreasonable as to "shock the sense of justice."

If, as Oldham testified, it is true that his failure to respond was that "it just didn't click ... it just didn't connect," then his failure to disclose the lawsuits was unintentional. If his explanation was false, of course, the failure to disclose was intentional.

The trial court concluded the reasons given by Mr. Oldham were true. The basis for the trial judge's conclusion was his presence when the original questions were asked at *voir dire*, his observation of Mr. Oldham's demeanor during the trial, and his observations of Mr. Oldham as a witness in the post-trial hearing. This led the trial judge to conclude that the explanation was "honest, cogent and reasonable."

By contrast, this Court concludes that Mr. Oldham's statements were false. The majority's conclusion is based upon the fact that Mr. Oldham admitted he understood the question, at least when asked after trial, and that the lawsuits were of recent vintage. Based on these two facts, the majority substitutes its conclusion for that of the trial judge. Plainly, the majority here is reweighing the credibility of testimony.

The long-standing rule of appellate courts has been to defer to trial court findings on factual matters. Such deference is born of experience and the firm belief that one who hears testimony and sees the witness's demeanor is in a far superior position to judge the credibility of that witness. In our legal system, we take it almost as an article of faith that a factual determination as to truthfulness is best done by one who directly observes the witness. Those notions lay at the foundation of the common law rule prohibiting hearsay evidence and the constitutional right to confrontation of witnesses. Here the majority gives no hint of deference to the trial judge. We should never lightly regard the ability of those hearing and seeing the evidence presented to gauge the demeanor and assess the credibility of witness-

es. *Washburn v. Medical Care Group*, 803 S.W.2d 77, 83 (Mo.App.1990).

To a lawyer, the precise question asked during *voir dire* seems simple and clear: "Do we have anyone here on the panel who is now or has been a defendant in a lawsuit?" The record discloses no hands were raised. That in itself is remarkable. In today's litigious and highly regulated society, to have any randomly selected group of twenty or more persons, none of whom has ever been a "defendant in a lawsuit," would defy all laws of probability. For such a group to answer the question in the negative would, in a technical sense, mean that none had ever been involved with a parking ticket, a speeding ticket, an uncontested divorce proceeding, a small claim, or any number of legal proceedings known to lawyers to make one into a "defendant in a lawsuit." It is far more likely that they simply failed to make a disclosure.

Does this mean that most or all the panel was intentionally lying because they failed to disclose any brushes with the court system? The obvious answer is "no." The reason potential jurors do not respond to such questions is that the popular notion of being a "defendant in a lawsuit" may not mean the same thing as it does to lawyers. To many ordinary people, being a "defendant in a lawsuit" means hiring a lawyer and going to court to defend some claim on the merits before a judge or a jury. To a venireperson asked that question, it may be perceived as seeking to know if the juror had contact with court personnel or if the potential juror had some experience or background with how a trial works. From that perspective, it seems irrelevant that one has received a summons. It is at least conceivable that an unsophisticated person served with a summons in a collection matter, traffic case, or the like, to which such person has no defense, would not understand himself to have been a "defendant in a lawsuit."

As judges, it is often difficult to comprehend how such misconceptions of such simple matters can occur on the part of citizens. Matters which seem simple and clear to those of us steeped in the law may be confusing or ambiguous to ordinary citizens. Our own ability to understand people like Mr. Oldham may be obscured by a lifetime of legal experience and, at least at the appellate level, a relatively isolated existence. I simply cannot say with the certainty expressed by the majority that real, honest and decent citizens cannot have occasions when a question like the one here just does not "click." Thus, I am unwilling to say that the trial court's choice of believing Mr. Oldham's testimony shocks my sense of justice.

While I need not discuss the question at length here, I believe the Court should take this opportunity to clarify the statement made in *Williams* that "a finding of intentional concealment has 'become tantamount to a per se rule mandating a new trial.'" *Williams*, 736 S.W.2d at 37. *Williams* seems not only to create an inference of prejudice but an irrebuttable presumption of prejudice requiring a new trial in every case. Surely, the majority would not grant a new trial if Mr. Oldham had been one of those jurors who voted for a plaintiff's verdict. As noted by Judge Carl Gaertner in *Alexander v. F.W. Woolworth Co., et al.*, 788 S.W.2d 763, 768 (Mo.App.1990), this "so-called 'per se rule' has not been applied except in instances where the nondisclosure, although found to be at least constructively intentional, was coupled with other factors.... [A]ll [the cases] focus upon nondisclosure of experiences of similar types of litigation or comparable physical injuries." I commend the rationale of *Alexander* to the majority of this Court. It would seem eminently bad law to set aside a jury verdict because of jury nondisclosure in the absence of some realistic indication that the process or the outcome was flawed by reason thereof.

In this particular case, it is a stretch of reason to assert that the seven uncontested collection cases brought by doctors against Mr. Oldham, resulting in garnishment, predisposed him to be more favorable to doctors or that, somehow, his involvement in an automobile property damage case would have some impact in a medical malpractice case. Nondisclosure should not mandate an order for new trial unless the information withheld is somehow material, that is, information that conceivably affects the outcome of the case.

Certainly, had all we now know about Mr. Oldham been disclosed before trial, it would not have been necessary to excuse him for cause at plaintiff's request. The only potential basis for his removal would have been a peremptory challenge.

A new trial subjects the courts, defendant and taxpayer to substantial cost. The egregiousness of invading a party's potential right to exercise peremptory challenge for obscure reasons pales when compared to the substantial burdens of a new trial order when no prejudice occurred. The benefit of a new trial is de minimis in a case where neither party was at fault and the juror had not been shown to be disqualified because of a predisposition in favor of or against either of the parties. I am unable to find that Mr. Oldham's prior contact with the court system was somehow material to the outcome of this case.