**Tracy JACKSON, Appellant,**

v.

**Elizabeth WATSON, Individually, and as Defendant Ad Litem for Clarence J. Watson, deceased, Respondents.**

**No. WD 54230.**

Missouri Court of Appeals, Western District.

Nov. 10, 1998.

---

Michael Knepper, Kansas City, for Appellant.

Kenneth Joseph Berra, Kansas City, for Respondent.

HANNA, Judge.

Tracy Jackson appeals from a judgment entered by the circuit court of Jackson County, pursuant to a jury verdict in favor of the defendants, Elizabeth and Clarence Watson.[1] Because we hold that one of the jurors intentionally withheld information during the *voir dire* examination, we reverse and remand for a new trial.[2]

Mr. Jackson sustained serious injuries in a car accident at an intersection of Adams Dairy Road and Locust in Blue Springs. The Watsons own the corner lot which lies adjacent to and east of Adams Dairy Road where, Jackson claims, the Watsons negligently allowed trees, shrubs and brush to block the view of drivers approaching the intersection.

---

1. Mrs. Watson's husband, Clarence Watson, died about one month prior to trial. The trial court substituted Mrs. Watson as the defendant ad litem for her husband prior to trial.

2. This automobile accident occurred May 30, 1986. Suit was filed May 29, 1991. This is its second appearance in this court.

Mr. Jackson contends that the trial court abused its discretion in finding that a juror's failure to disclose information during *voir dire* was unintentional. Jackson also claims that the trial court erred in submitting the Watsons' converse instruction, and in failing to grant his request for a judgment notwithstanding the verdict, because the Watsons' failed to make a submissible case on their affirmative defense that the City of Blue Springs had a right-of-way on the Watsons' property where the allegedly overgrown vegetation was located. Finally, he asserts that the trial court erred in admitting evidence presented by the Watsons as to whether Blue Springs had a right-of-way on their property.[3] We reverse the judgment because the trial court erred in ruling that the juror unintentionally disclosed certain information during *voir dire* examination and that such nondisclosure was not prejudicial. Having determined that the defendants were not entitled to a directed verdict or judgment notwithstanding the verdict, the case is remanded for a new trial.

Mr. Jackson was a passenger in an automobile driven by Mary Behnke Chambers travelling westbound on Locust Drive. Ms. Behnke stopped at the stop sign at Adams Dairy Road. She pulled into the intersection and was hit by a pickup truck driven by Ronald Hanlan. The truck was proceeding southbound on Adams Dairy Road. Ms. Behnke's car was hit on the passenger side.

The Watsons owned the property on the northeast corner of the intersection where the collision occurred. Jackson claims that the Watsons negligently allowed vegetation to grow so close to Adams Dairy Road that it blocked the view of the drivers to the north, from the stop sign on Locust Drive, and also blocked the view of drivers travelling southbound on Adams Dairy Road.

The first issue raised on appeal is whether the trial court abused its discretion in finding that a juror's failure to disclose her prior litigation experience during *voir dire* was unintentional and nonprejudicial. During *voir dire*, plaintiff's counsel asked the panel members about their prior litigation history. Plaintiff's counsel asked: "[H]ave any of you ever been a plaintiff in a civil action, have you ever brought a claim in a court of law against anyone? Have you ever filed suit —— ?" After some venirepersons asked whether he restricted his question to "the ones that only went to court," plaintiff's counsel said: "No, I want to know if you ever filed one, period; whether it went to court or not." Several of the panel members responded to the question, including juror Lowe, by indicating that they had been plaintiffs in lawsuits. Juror Lowe stated that she was a plaintiff in an automobile accident resulting in a property damage claim, which was currently pending in Jackson County.

Plaintiff's counsel then asked: "Have any of you ever been sued in a lawsuit?" Several individuals responded. They discussed numerous workers' compensation claims, a municipal court proceeding in which a venireperson was charged with making harassing phone calls, and a "business action" which was settled out of court. The dates of the various litigation experiences ranged from the sixties and to as recently as three years previously. Lowe did not respond to the question of whether she had been sued. Juror Lowe served as a juror.

At the post-trial hearing on the plaintiff's Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for New Trial, Jackson County court documents were placed in the record that showed that in 1989 and 1990, American Family Insurance and State Farm Insurance sought damages against Lowe and her husband because her son allegedly set fire to the duplex that was leased to the Lowe family. In 1992, an unlawful detainer complaint was filed by The Federal National Mortgage Association, a judgment was entered against the Lowes, and restitution of the premises was made by the court administrator.[4]

Lowe admitted that she heard counsel's questions regarding whether she had been

3. We are not addressing the points on appeal in the order in which they were raised by the appellant.

4. Additionally, U.S. Bankruptcy Court documents evidencing the fact that the Lowes filed for bankruptcy in 1990, were placed in the record.

sued in a lawsuit. She first testified that the reason that she did not disclose her involvement in the prior lawsuits, was because she "thought [counsel] wanted recent things that never went to court," and "[the lawsuits] were like a lifetime ago. I understood that I thought he wanted recent, within the last three years, or two years, and I haven't been, well, I did bring up that case about the car ... I guess I didn't understand quite what he was talking of." On cross-examination, she admitted that the question was not limited in any way to the number of years, and she instead concluded that the cases were not important.

Plaintiff's counsel questioned her about each lawsuit. Lowe indicated that she knew that she was a defendant in each suit, and that she was aware of the suit on the date of *voir dire,* but failed to mention them. Furthermore, she testified that she heard the other members of the venire discuss their involvement in lawsuits as far back as 1960, and that she realized that they were addressing lawsuits that were older than the ones that she was involved.

The order overruling the plaintiff's motion indicated that the trial judge considered the testimony and the "actions and demeanor of said jurors in testifying herein" and concluded that:

(1) said jurors failure to disclose their involvement in said prior litigation was inadvertent, unintentional and reasonably explained;

(2) the prior litigation ... did not involve personal injury claims or lawsuits, but involved the collection of money and amounted to unintentional non-disclosure of nonmaterial information; and

(3) said jurors presence on the jury did not influence the verdict so as to prejudice the plaintiff.

■When a juror fails to disclose information during *voir dire,* Missouri case law identifies the threshold issue as whether the nondisclosure was intentional. Intentional nondisclosure occurs:

1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and

2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable.

*Brines v. Cibis,* 882 S.W.2d 138, 139 (Mo. banc 1994) (quoting *Williams By Wilford v. Barnes Hosp.,* 736 S.W.2d 33, 36 (Mo. banc 1987)).

■ The *Brines* court requires, as an initial matter, that a clear question be asked at *voir dire* before nondisclosure can occur. 882 S.W.2d at 139. Here, as in *Brines,* counsel asked whether any panel member had ever been sued in a lawsuit "unequivocally triggered the prospective jurors' duty to disclose previous lawsuits against them." *Id.* The record evidence and Lowe's admission established the nondisclosure.

Thus, the issue is whether the nondisclosure of the lawsuits was intentional. Lowe testified, during the post-trial hearing, that she heard and understood the questions, as well as the answers from other panel members concerning their involvement in prior lawsuits, and was aware of the lawsuits which had been brought against her at the time of *voir dire.*[5] She admitted that she did not disclose these lawsuits. Although there was some testimony that she thought the lawsuits were too remote in time to be relevant, she knew that other panel members had revealed much older lawsuits, and that her nondisclosure was based on her decision that the lawsuits were not important.

■ Although we are to give the trial court's findings great weight concerning whether nondisclosure was intentional, such findings must be overturned if the trial court

---

5. The Watsons argue that Lowe's testimony at the post-trial hearing does not compel a finding that she "actually recalled" the lawsuits at the time of the *voir dire* examination. They claim that her affirmative response to the question of whether she was aware of the lawsuits, "does not necessarily mean that, at any given time, one is conscious of the existence of such circumstances as would seem to be implied if it is said that one actually recalled those circumstances." Our review of the record, however, leaves us with the firm impression that Lowe was aware of the lawsuits at *voir dire* and that she chose to not disclose them. See our discussion, *supra.*

abused its discretion. *Brines*, 882 S.W.2d at 138 (citing *Anglim v. Missouri Pacific R.R.*, 832 S.W.2d 298, 306 (Mo. banc 1992)). In this case, the evidence does not support the conclusion that Lowe's nondisclosure was unintentional.

> Given that the juror understood that [she] was being asked to reveal any lawsuits against [her,] that all the lawsuits were of recent vintage, and that [she] actually recalled the lawsuits, the explanation for [her] silence was unreasonable. Therefore, the trial court abused its discretion in finding unintentional disclosure.

*Brines*, 882 S.W.2d at 139. *See also Rife v. State Farm Mut. Auto. Ins. Co.*, 833 S.W.2d 42, 43–44 (Mo.App.1992)(ruling abuse of discretion because "[t]he court in effect found the nondisclosure by [the juror] was intentional but chose to accept [the juror's] explanation and thereby converted an intentional nondisclosure into an unintentional nondisclosure.")

Intentional nondisclosure results in a presumption of bias and prejudice. As stated in *Groves v. Ketcherside*:

> Whether a venire person's nondisclosure is intentional is significant. We infer bias and prejudice from a venire person's intentionally withholding material information which has been requested during *voir dire*. A finding of intentional concealment has 'become tantamount to a per se rule mandating a new trial.'

939 S.W.2d 393, 395 (Mo.App.1996)(quoting *Williams By Wilford*, 736 S.W.2d at 37). *See also Hoff v. Posten*, 963 S.W.2d 13, 14–15 (Mo.App.1998)(ruling that intentional nondisclosure regarding status as a judgment debtor was material even though the prior actions were for collection, and did not relate to personal injury). "[Q]uestions and answers pertaining to a prospective juror's prior litigation experience are material." *Brines*, 882 S.W.2d at 140. Here, Lowe's nondisclosure, during *voir dire*, of the lawsuits previously brought against her was intentional and material and, as such, the trial court erred in finding otherwise.

In order to assist the attorneys and the court on retrial, we will address other claims of trial court error raised by Jackson. He contends that it was error to submit Watsons' converse instruction arguing that they failed to make a submissible case on their affirmative defense, and that the admission of the Watsons' evidence on the same issue was improper.

Jackson contends that the Watsons failed to make a submissible case on their affirmative defense that Blue Springs had a right-of-way over the portion of the Watsons' property upon which the overgrown vegetation was located. He argues that there was no substantial evidence to support the Watsons' jury instruction that either: (1) Blue Springs "had a right-of-way over the western portion of the [Watsons'] property that abutted Adams Dairy road upon which the shrubbery, trees and foliage grew," or (2) "for at least ten years prior to May 30, 1986, [Blue Springs] had and maintained continuous, uninterrupted, visible and adverse use of a right-of-way" over the relevant portion of the Watsons' land.

In the briefs filed with the court, the parties contest whether there was an adverse use of the right-of-way. The Watsons argue that the property was conveyed to them by Mrs. Watson's parents in October 1970. The deed excepted from the legal description: "that part thereof in Adams Dairy Road." In 1971, the property was annexed by the city of Blue Springs. The plats, which dedicated the property directly across Adams Dairy Road, dedicated a 25–foot right-of-way for Adams Dairy Road running essentially from the center line of the road to the west.

A Jackson County assessment map showed the existence of a 50–foot right-of-way for Adams Dairy Road adjoining the Watson property. The Blue Springs city attorney testified that the city requires a 50–foot right-of-way for thoroughfares such as Adams Dairy Road. Another drawing, the plans for a storm sewer improvement constructed in 1982, showed the Watson property line to be 30 feet east of the center of the road. Various drawings made in 1986 related to the reconstruction of the road. Other drawings made in 1987 showed a then-existing right-of-way for Adams Dairy Road of 50 feet along the west side of the Watson prop-

erty. There was other evidence relating to the City's easement or right-of-way. It is undisputed that the foliage in question, which formed the basis for the plaintiff's cause of action, was west of that line.

In *Jackson v. City of Blue Springs,* this court stated that "the evidence on the issue of whether the City had an easement over the corner lot and whether the corner lot was maintained, and if so by whom, was conflicting." 904 S.W.2d 322, 338 (Mo.App.1995). We determined that it was not an appropriate issue for summary judgment because there was evidence supporting the existence and nonexistence of an easement over the property. *Id.* The Watsons made a submissible case on this issue.

▆ Additionally, the Watsons raise the defense that all of the points raised on appeal are moot because Jackson's evidence was insufficient to establish that the condition of the foliage presented an unreasonable risk of harm to motorists on the adjoining streets. The Watsons argue that the cause of action failed, as a matter of law, because Jackson's evidence established that when Ms. Behnke drove to the edge of Adams Dairy Road, she could see 300 feet to the north. Thus, they argue that there was no causal relationship between the accident and the fact that visibility from the stop sign may have been limited. Also, Jackson's evidence established that the car in which he was a passenger was struck "pretty instantaneously" after it pulled into the intersection. Thus, if as Ms. Behnke testified, she first saw the oncoming truck when it was 60 to 90 feet away and it was being driven 60 to 65 miles per hour, the evidence established that the accident was caused either by Behnke's negligence in failing to observe the approaching truck, which was clearly visible, and/or the negligence of the truck driver whose speed was grossly excessive in a residential area. This evidence defeated Jackson's case and, the court erred in not entering judgment notwithstanding the verdict.

However, there was evidence that Mr. Watson knew that the location was dangerous. Also, Mrs. Watson testified that vegetation had grown during the time they resided there and that they never cut it. Other witnesses who had personal knowledge said the foliage obscured their vision. Furthermore, there was additional evidence that the foliage was the proximate cause of the accident. From this evidence, a reasonable jury may have concluded that the brush, trees and foliage did not obscure Ms. Behnke's view, and that she could have seen Hamlin's truck approaching at a high rate of speed. Conversely, the jury could have concluded that the vegetation obscured Ms. Behnke's vision of the oncoming vehicle and was the efficient cause which set in motion the chain of circumstances leading to the injury. *See Oldaker v. Peters,* 869 S.W.2d 94, 100 (Mo.App. 1993). As a matter of law, the Watsons were not entitled to a directed verdict or judgment notwithstanding the verdict.

Finally, a number of evidentiary matters have been raised by Jackson, relating to the admission of documentary and expert opinion evidence concerning the City's right-of-way or easement over the Watsons' property and similar evidence subsequent to the date of the collision. The parties have carefully briefed each of these issues and we will not unduly lengthen this opinion in answering these evidentiary matters. We anticipate that the parties will carefully review the briefs and on retrial will be guided by the legal arguments presented here.

The judgment of the circuit court is reversed and the case remanded for a new trial.

ULRICH, P.J., and EDWIN H. SMITH, J., concur.