OVERLAP, INC., Respondent–
Appellant,

v.

A.G. EDWARDS & SONS, INC.,
Appellant–Respondent.

Nos. WD 69700, WD 69734.

Missouri Court of Appeals,
Western District.

June 15, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 2010.

Application for Transfer Denied
Sept. 21, 2010.

Jeffrey J. Kalinowski, Carrie J. Bechtold, St. Louis, Lori J. Sellers, Kansas City, for Appellant–Respondent.

Patrick J. Stueve, Eric L. Dricks, Kansas City, MO, for Respondent–Appellant.

Before JAMES EDWARD WELSH, P.J., VICTOR C. HOWARD, and ALOK AHUJA, JJ.

JAMES EDWARD WELSH, Presiding Judge.

A.G. Edwards & Sons, Inc., appeals the circuit court's judgment awarding Overlap, Inc., compensatory and punitive damages in the amount of $4.1 million on Overlap's claims for breach of a mutual fund analysis software license agreements, fraud, and negligent misrepresentation. This Court issued an opinion in this case on June 23, 2009. The Supreme Court of Missouri issued an order sustaining an application for transfer to that Court on October 6,

2009, and, on April 20, 2010, the Supreme Court issued an order retransferring the case to this court for reconsideration in light of *Johnson v. McCullough,* 306 S.W.3d 551 (Mo. banc 2010), which was decided by the Supreme Court on March 9, 2010. Thus, the original opinion of this court, which follows, is now readopted and reissued with attribution to the Supreme Court's *Johnson* opinion.

On appeal, A.G. Edwards & Sons raises eleven points: three of those points concern alleged error by the circuit court regarding the statutes of limitations; four of the points concern alleged error by the circuit court in submitting and in denying A.G. Edwards & Sons' motion for directed verdict or judgment notwithstanding the verdict on Overlap's claims for fraud and negligent misrepresentation, fraudulent concealment, punitive damages, and breach of the revised license agreement; one point concerns alleged instructional error; one point concerns alleged error by the circuit court in excluding parol evidence as to the meaning of the revised license agreement; and two of the points concern the circuit court's denial of A.G. Edwards & Sons' motion for new trial. In response to A.G. Edwards & Sons' appeal, Overlap filed a contingent cross-appeal asserting three issues. Overlap asks us to address its cross-appeal only if we reverse the circuit court's order and remand for a new trial in response to A.G. Edwards & Sons' appeal.

A.G. Edwards & Sons' eleventh point on appeal is dispositive. Because a juror intentionally failed to disclose that he had been a party to a lawsuit, the circuit court erred in denying A.G. Edwards & Sons' motion for new trial. We, therefore, reverse the circuit court's judgment and re-

mand for a new trial. Because the statutes of limitation issue will continue to be an issue on retrial, we also address A.G. Edwards & Sons' contention that all of Overlap's claims are barred by five-year statutes of limitation.[1] Overlap's amendment naming A.G. Edwards & Sons as a defendant related back to the original filing of Overlap's petition and, therefore, was filed within the applicable statutes of limitation.

## FACTUAL BACKGROUND

Overlap is a computer software developer that developed a software program that compares the stock holdings of two or more mutual funds and, to the extent that the funds hold the same stocks, calculates the degree of overlap. In using the software, the user inputs the names of the mutual funds to be compared, and the software generates a report that lists the percentage of overlap between the funds. This report allows a licensed user to quickly and easily determine whether the mutual funds being compared are truly diversified one from the other. The Overlap analysis provides a tool for a financial consultant to use to explain to a client or a prospective client why they should buy or sell mutual funds and thereby maximize diversification within a portfolio.

In 1997, an employee in the A.G. Edwards & Sons' Managed Products department purchased four single user licenses of the Overlap software on behalf of A.G. Edwards & Sons. A.G. Edwards & Sons continued to purchase four copies of the updated software on a quarterly basis through the fall of 2001. A.G. Edwards & Sons installed the software on fifty-one computers.[2] A.G. Edwards & Sons' em-

---

1. *See* section 516.120, RSMo 2000.

2. Although A.G. Edwards & Sons initially disputed that the software had not been installed

on fifty-one of its computers, A.G. Edwards & Sons conceded during closing argument at trial that damages could be awarded based on

ployees used the Overlap software to answer questions and advise A.G. Edwards & Sons' 7,000 financial consultants regarding the mutual funds holdings of clients.

On August 9, 2000, Overlap's chief executive officer, Kevin Fryer, received an electronic mail from Ann Rauch, an employee of A.G. Edwards & Sons' Managed Products department, seeking guidance about the future usage of the Overlap software. The electronic mail said:

> We ... would like to be able to provide an overlap analysis for our Financial Consultant's [sic] to use in conjunction with a Mutual Fund Portfolio Analysis we already provide. This is a formal personalized presentation for clients/prospects. I was not sure if your licensing agreement allows this or not.... Please let me know what we need to do.

After receiving the electronic mail, Fryer telephoned Rauch and informed her that such usage was not permitted under the single user license but that he was willing to negotiate a multi-user license.

Thereafter, on September 13, 2000, Fryer attended a meeting in St. Louis with representatives of A.G. Edwards & Sons, where they discussed different options for providing Overlap analyses to A.G. Edwards & Sons' financial consultants. According to Fryer, someone at that meeting represented that A.G. Edwards & Sons was using the Overlap software for internal research purposes but that A.G. Edwards & Sons wanted in the future to make the Overlap software available to all of its financial consultants. When asked whether anyone at A.G. Edwards & Sons told him that it was already sharing the Overlap reports with financial consultants, Fryer testified: "No, absolutely not. In fact, they told me the opposite. They told

me it was something they wanted to do in the future." Fryer said that, during all of his contacts with A.G. Edwards & Sons, no one ever disclosed that A.G. Edwards & Sons was already providing Overlap analyses to its financial consultants throughout the country.

After the September meeting, Fryer sent several proposals to A.G. Edwards & Sons, including a proposal that would permit each financial consultant to run the Overlap software on his or her own computer at an annual cost of $80 per consultant—approximately $560,000 per year. Alternatively, Fryer proposed to permit A.G. Edwards & Sons' Managed Products department to run reports for financial consultants at an annual cost of $40 per financial consultant—approximately $272,000 per year. A.G. Edwards & Sons did not agree to any of these proposals.

In August 2001, nearly one year after the multi-user license negotiations began between Fryer and A.G. Edwards & Sons, Jose Lavato, an A.G. Edwards & Sons information technology technician, contacted Fryer. During this conversation, Lavato informed Fryer that A.G. Edwards & Sons was having a technical problem between the Overlap software and another software program, both of which were installed on forty computers. When Fryer learned that A.G. Edwards & Sons had installed the Overlap software on forty of its computers, Fryer contacted Overlap's attorney.

On November 19, 2001, Overlap's attorney sent a cease and desist letter to John Meiners, Vice President of A.G. Edwards & Sons. The letter noted that Lavato had advised Fryer that forty separate users were using Overlap's software, notwithstanding the fact that Overlap's records showed that only four licenses of the soft-

the fifty-one computer number advanced by Overlap.

ware were held by A.G. Edwards & Sons. The letter demanded that A.G. Edwards & Sons "cease and desist from any use of Overlap's software product other than the use pursuant to which it is specifically authorized under the license agreement." The letter also requested that A.G. Edwards & Sons compensate Overlap for the past use of its software product in violation of the license agreement.

In response to the cease-and-desist letter, Meiners contacted Overlap's counsel and denied that A.G. Edwards & Sons was using the Overlap software beyond the licenses it had and denied that it had loaded the Overlap software on computers for which it did not have licenses. On November 29, 2001, A.G. Edwards & Sons informed the Managed Products Department: "Do not create an overlap analysis for anyone. There are no exceptions!!!"

On January 21, 2003, Overlap filed its petition against A.G. Edwards Capital, Inc., and several others claiming a breach of license agreement and unfair competition. On October 8, 2003, A.G. Edwards Capital filed a motion to sever the claims against A.G. Edwards. In that motion, A.G. Edwards Capital informed Overlap that it had sued the wrong A.G. Edwards corporate entity. According to A.G. Edwards Capital, "The entity that should have been named as a defendant is A.G. Edwards & Sons, Inc." The circuit court granted A.G. Edwards Capital's motion to sever. On November 20, 2006, Overlap filed its first amended petition against A.G. Edwards Capital and A.G. Edwards & Sons. In that amended petition, Overlap asserted four counts against A.G. Edwards Capital and A.G. Edwards & Sons: breach

of license agreement, unfair competition, fraud, and negligent misrepresentation. On May 31, 2007, Overlap voluntarily dismissed with prejudice A.G. Edwards Capital as a party.

After an eight day trial, the jury returned verdicts in favor of Overlap as follows: for breach of the original license agreement $22,278; for breach of the revised license agreement $1,217,370; for fraud $1,800,000 plus $2,300,000 in punitive damages; and for negligent misrepresentation $1,800,000.[3] The circuit court merged the compensatory damages into a single compensatory damages award of $1,800,000, which when combined with the punitive damages award of $2,300,000, resulted in a total damage award of $4,100,000 in favor of Overlap and against A.G. Edwards & Sons. A.G. Edwards & Sons appeals, and Overlap cross-appeals.

## ANALYSIS

### Juror Nondisclosure

 A.G. Edwards & Sons' eleventh point on appeal is dispositive of A.G. Edwards & Sons' appeal and Overlap's contingent cross-appeal. In that point, A.G. Edwards & Sons contends that the circuit court erred in denying its motion for new trial because a juror intentionally failed to disclose during *voir dire* that he had been a party to a prior lawsuit. We agree.

 During *voir dire*, the jury panel was asked: "What I'd like to know now is, anyone that's on this panel has ever been a party to a lawsuit, either a plaintiff or a defendant in a lawsuit?"[4] Juror Number

---

3. The circuit court sustained A.G. Edwards & Sons' motion for directed verdict as to the unfair competition claim.

4. "Nondisclosure, whether intentional or unintentional, can occur only after a clear ques-

tion is asked on voir dire." *Brines by Harlan v. Cibis*, 882 S.W.2d 138, 139 (Mo. banc 1994). Neither party contends the question asked was not sufficiently clear to trigger Hillerman's obligation to disclose the information requested. Indeed, from an objective

Eight, Brian Hillerman, did not respond.[5] After the trial concluded, defense counsel conducted an investigation, which ultimately revealed that Hillerman had failed to disclose that he had been sued in 2001. In 2001, Karol Turner sued Hillerman and Pavestone Company, L.P., for damages she sustained as a result of an automobile crash. A jury returned a verdict in Turner's favor and awarded $25,106.51 in damages.

In denying A.G. Edwards & Sons' motion for new trial, the circuit court found that Hillerman's failure to disclose that he had been a party to a lawsuit was intentional. Neither party contests the circuit court's finding that Hillerman's nondisclosure was intentional. A juror during voir dire has a duty to fully, fairly, and truthfully answer all questions so that his qualifications may be determined and so that the attorneys may intelligently exercise any challenges. *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). "Both parties are entitled to unbiased jurors whose experiences, even innocently and reasonably undisclosed, will not prejudice the resolution of the cause." *Id.*

"Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable."[6] *Id.* If a venire person's nondisclosure during *voir dire* is intentional, we infer bias and prejudice.[7] *Id.* at 37. Thus, "[a] finding of intentional concealment has 'become tantamount to a per se rule mandating a new trial.'" *Id.* (citations omitted).

Despite finding that the nondisclosure was intentional, the circuit court denied

---

standard of clarity, the question asked was a general question, and the surrounding context did not render it confusing or ambiguous. *See Johnson*, 306 S.W.3d at 557.

5. The failure to answer a clear question is considered a nondisclosure. *Massey v. Carter*, 238 S.W.3d 198, 201 (Mo.App.2007).

6. The circuit court held an evidentiary hearing upon the nondisclosure issue, and Hillerman testified at that evidentiary hearing. Based upon Hillerman's testimony, the circuit court found that the nondisclosure was intentional:

> [O]ne juror, Juror Hillerman, was a defendant in *Karol J. Turner v. Brian S. Hillerman and Pavestone Company, L.P.*, ... out of the Circuit Court of Jackson County Missouri. Hillerman knew that case went to jury trial, remembered the case at the time of *voir dire*, recalled being asked about litigation and stated that he "might" have raised his hand to answer the pertinent question when asked (the juror did not recall raising his hand to answer the pertinent question and the Court notes that it

did not observe Hillerman's hand raised during these questions). Hillerman also indicated that he did not respond because of embarrassment. This failure to respond constituted intentional failure to disclose prior involvement in litigation.

"The determination of whether concealment is intentional or unintentional is left to the sound discretion of the trial court." *Wilford*, 736 S.W.2d at 36. The circuit court's determination that Hillerman's nondisclosure was intentional is not an abuse of discretion.

7. Overlap contends that we should affirm the circuit court's denial of the motion for new trial based on juror nondisclosure because nothing exists in the record to suggest that the juror nondisclosure in this case prejudiced or tainted the verdict in any way or that it biased the jury against A.G. Edwards & Sons. The Missouri Supreme Court, however, has explicitly held that we infer bias and prejudice if a juror's nondisclosure is intentional. *Williams*, 736 S.W.2d at 37. We are constitutionally bound to follow the Missouri Supreme Court's decision. Mo. Const. art. V, § 2.

A.G. Edwards & Sons' motion for new trial and found that A.G. Edwards & Sons should have conducted an investigation during trial and raised its juror nondisclosure concerns before the case was submitted to the jury. This ruling was directly contrary to existing Missouri Supreme Court precedent. *Brines by Harlan v. Cibis*, 882 S.W.2d 138 (Mo. banc 1994).

In *Brines*, the appellant argued that the circuit court erred in not granting a new trial based on a juror's intentional failure to disclose that he had been a defendant in a lawsuit. *Id.* at 139. On appeal, the respondents argued that the appellant "did not exercise 'due diligence' in discovering the nondisclosure." *Id.* at 140. Specifically, the respondents asserted that " 'by using due diligence, [the appellant] could have learned well before the jury began its deliberations that [the juror] had been sued.' " *Id.* The Missouri Supreme Court rejected this argument and explicitly found that a litigant has no duty to conduct an investigation concerning a juror's nondisclosure before jury deliberations. *Id.* The *Brines* court noted that a litigant is not required to "investigate whether the prospective jurors have answered the questions truthfully unless the litigant had some indication that the answer was false." *Id.* Only when a litigant is privy to information regarding a prospective juror's false answer or nondisclosure and fails to challenge the juror when the information is obtained, does the litigant waive the right to complain about the nondisclosure after trial. *Id.*

Here, A.G. Edwards & Sons did not learn of Hillerman's nondisclosure until it conducted a post-trial investigation. Thus, under *Brines*, A.G. Edwards & Sons had no obligation to investigate Hillerman's nondisclosure prior to the jury's deliberations. Indeed, the circuit court found that, "under the *Brines* standard[, Hillerman] would have qualified for juror nondisclosure and we would be back for a new trial."

The circuit court, however, chose not to follow *Brines* but instead relied on *dictum* of this court in *McBurney v. Cameron*, 248 S.W.3d 36 (Mo.App.2008) (en banc). In *McBurney*, this court held that the circuit court did not err in denying a motion for new trial based upon a juror's failure to disclose during *voir dire* that he had prior litigation experience. *Id.* at 46–47. The *McBurney* court found that the juror's failure to disclose during *voir dire* that he had prior litigation experience did not amount to intentional nondisclosure because the *voir dire* question asked of the juror was unclear and ambiguous. *Id.* at 42–47.

Prior to reaching the operative basis of the ruling, the *McBurney* opinion explicitly noted that "the issue of the timeliness of the appellants' efforts in researching the litigation history of those chosen to serve on the jury" was not raised in the appeal. *Id.* at 41–42. The court opined, however, in *obiter dictum*, that the issue of "timeliness in a juror challenge is important in view of the expense and burden to parties and taxpayers of conducting another jury trial." *Id.* at 41. According to the *McBurney dictum*, it is "realistic for an attorney to send a member of his or her clerical staff to any computer, at any time of day or night, to research the civil litigation records before submission of the case, rather than waiting until after an adverse verdict to do so." *Id.* The *McBurney* court, therefore, "commend[ed] consideration of this matter to the attention of counsel trying future cases," *id.* at 42, and encouraged "counsel to make such challenges *before* submission of the case whenever practicable." *Id.* at 41.

In making these recommendations, the *McBurney* court acknowledged that the

issue of "timeliness" was raised in the Missouri Supreme Court's decision in *Brines*. *Id.* The *McBurney* court also recognized that the *Brines* court declined to adopt defendant's argument that the juror nondisclosure "claim was untimely, amounting to waiver, because the plaintiff could have researched the jurors' experience, through the use of 'due diligence,' well before the jury began its deliberations." *Id.* The *McBurney* court merely speculated, however, that "the issue may not necessarily be settled forever in view of the technological advances in the thirteen years since *Brines*." *Id.* The *McBurney* court noted: "The Missouri court system now has an automated case record service, CaseNet, by which civil litigation history can be readily accessed by any computer at any time. This was not true at the time the Court considered the issue in *Brines*." *Id.*

In raising the issue of timeliness *sua sponte* and offering its recommendations, the *McBurney* court did not, and further could not, change the rule articulated in *Brines*. The *McBurney* court was merely encouraging attorneys to make juror nondisclosure challenges before submission of the case to the jury whenever practicable and was noting that the issue may need to be revisited by the Missouri Supreme Court at some point. *Id.* And, that is just what the Missouri Supreme recently did in *Johnson v. McCullough*, 306 S.W.3d 551 (Mo. banc 2010).

In *Johnson*, the defendant claimed that the circuit court erred in granting a new trial because Johnson's juror nondisclosure argument was untimely because it was raised after Johnson had received an adverse verdict following a six-day jury trial. *Id.* at 558. In support of his argument, Johnson relied on the *dictum* in *McBurney*, which the Supreme Court acknowledged. *Id.* The *Johnson* court, however, noted the holding in *Brines* and said:

> This Court cannot convict the trial court of error in following the law in existence at the time of trial. Further, there was no evidence that it was practicable for the attorneys in this case to have investigated the litigation history of all of the selected jurors prior to the jury being empanelled.[8]

*Id.* (citation omitted). The Supreme Court held that the circuit court did not err in finding that Johnson's juror intentional nondisclosure claim was timely. *Id.* The Court concluded that "[u]nder the case law at the time of trial, it was timely raised." *Id.* at 554.

In so concluding, however, the Court noted that, in the future, "in light of advances in technology allowing greater access to information that can inform a trial court about the past litigation history of venire members, it is appropriate to place a greater burden on the parties to bring such matters to the court's attention at an earlier stage." *Id.* at 558–59. The Court said:

> discover a juror's prior litigation history, a party is attempting to "to investigate whether the prospective juror [has] answered the questions truthfully," and the *Brines* court said that such investigation was unnecessary "unless the litigant had some indication that the [juror's] answer was false." *Id.* There was no indication in the record that A.G. Edwards & Sons knew that Hillerman had been a party to a lawsuit prior to the case being submitted to the jury.

---

8. We acknowledge that the Brines court said that a party should raise any information regarding a juror's nondisclosure to which it is privy or the party waives its ability to challenge the juror's nondisclosure. *Brines*, 882 S.W.2d at 140. We do not believe that, just because A.G. Edwards & Sons had the ability to conduct a Case.net search before the case was submitted to the jury, such ability made it "privy" to Hillerman's prior litigation history. Indeed, in performing a Case.net search to

Litigants should not be allowed to wait until a verdict has been rendered to perform a Case.net search for jurors' prior litigation history when, in many instances, the search also could have been done in the final stages of jury selection or after the jury was selected but prior to the jury being empanelled. Litigants should endeavor to prevent retrials by completing an early investigation. Until a Supreme Court rule can be promulgated to provide specific direction, to preserve the issue of a juror's nondisclosure, a party must use reasonable efforts to examine the litigation history on Case.net[9] of those jurors selected but not empanelled and present to the trial court any relevant information prior to trial. To facilitate this search, the trial courts are directed to ensure the parties have an opportunity to make a timely search prior to the jury being empanelled and shall provide the means to do so, if counsel indicates that such means are not reasonably otherwise available.

*Id.* at 559.

■ This shift in the law, however, does not aid Overlap in this appeal. In *Sumners v. Sumners*, 701 S.W.2d 720, 723 (Mo. banc 1985), the Missouri Supreme Court recognized the general rule that a change in the law by judicial decision is to be given retroactive effect. The Court, however, also acknowledged its authority "to declare whether such decisions are retroactive or prospective 'based on the merits of each individual case.'" *Id.* (citation omitted). The Court noted that two ex-

ceptions exist to the general rule of retroactivity. *Id.* "The first exception is found when the change pertains to procedural as opposed to substantive law." *Id.* Such procedural decisions are to be given prospective effect only. *State v. Shafer*, 609 S.W.2d 153, 157 (Mo. banc 1980). The second exception turns not on whether the change in the law is procedural or substantive but on the issue of fundamental fairness. *Sumners*, 701 S.W.2d at 723. "If the parties have relied on the state of the decisional law as it existed prior to the change, courts may apply the law prospectively-only in order to avoid injustice and unfairness." *Id.* Both of these exceptions apply in this case: the timing for a challenge to juror nondisclosure is obviously procedural, and A.G. Edwards & Sons relied on the state of the decisional law as it existed prior to *Johnson* in making its investigation about potential juror nondisclosure issues after the trial. Therefore, *Johnson* should apply prospectively only in these circumstances. This is just what the Supreme Court did in *Johnson* itself: it refused to apply its new rule to the case before it and, instead, applied "the law in existence at the time of trial." *Johnson*, 306 S.W.3d at 558, *see also id.* at 554 (concluding juror nondisclosure claim timely raised "[u]nder the case law at the time of trial").

Under the case law at the time of trial, A.G. Edwards & Son's intentional juror nondisclosure claim was timely raised. Just as was the case in *Johnson*, at the time of the trial in this case, *Brines* was the law in Missouri. As such, the circuit

---

9. In so ruling, the *Johnson* court recognized that Case.net is not an official record and that it has its limitations: "First, Case.net may contain inaccurate and incomplete information. Second, Case.net may have limited usefulness in searches involving common names or when a person's name has changed." *Johnson*, 306 S.W.3d at 559 n. 4. The Court said that "[u]ntil a more specific rule is promulgated, the trial court must determine whether a party has made a reasonable effort in determining a juror's prior litigation history by searching Case.net." *Id.* The Court also said that "[s]earches of other computerized record systems, such as PACER, are not required." *Id.*

court was constitutionally bound to follow it, no matter how laudable and omnipotent its recommendations may have been concerning the timeliness of juror nondisclosure claims. Mo. Const. art. V, § 2. Because Juror Hillerman's failure to disclose that he had been a party to a lawsuit was intentional, the circuit court erred in denying A.G. Edwards & Sons' motion for new trial. We, therefore, reverse the circuit court's judgment and remand for a new trial.[10]

### Statute of Limitations

■ Because the statutes of limitation issue will continue to be an issue on retrial, we also address A.G. Edwards & Sons' contention that all of Overlap's claims are barred by the five-year statutes of limitation.[11] A.G. Edwards & Sons contends that Overlap's claims for breach of the license agreements, negligent misrepresentation, and unfair competition are time barred because the damages were capable of ascertainment more than five years before Overlap sought leave to file its amended petition and that Overlap's fraud claim is time barred because Overlap discovered the alleged fraud more than five years before it sought leave to file its amended petition. According to A.G. Edwards & Sons, Overlap knew about its claims by at least November 19, 2001, when it sent the cease and desist letter to A.G. Edwards & Sons, but Overlap did not add A.G. Edwards & Sons as a defendant until November 20, 2006. A.G. Edwards & Sons also asserts that, because Overlap's amended petition did not change defendants but

added one and because Overlap was aware that it sued the wrong party before the statute of limitations had run, Rule 55.33(c)'s relation back doctrine does not apply. We disagree.

■ "Normally, the running of the statute [of limitations] is a question of law for the trial court to decide." *Straub v. Tull,* 128 S.W.3d 157, 159 (Mo.App.2004). "Such questions of law are granted *de novo* appellate review with no deference being paid to the trial court's determination of law." *Id.*

No dispute exists in this case that, when Overlap filed its original petition in this case on January 21, 2003, it named A.G. Edwards Capital, Inc., as a defendant and not A.G. Edwards & Sons. No dispute also exists that Overlap sent the cease and desist letter to A.G. Edwards & Sons on November 19, 2001. Overlap, therefore, knew about its claims against A.G. Edwards & Sons sometime before November 19, 2001. Further, the parties acknowledge that Overlap did not file an amended petition naming A.G. Edwards & Sons as a party until November 20, 2006. The dispute about the statute of limitations issue concerns the application of the relation back doctrine, which is set forth in Rule 55.33(c).

■ Rule 55.33(c) allows an amended petition filed out of time to relate back to the original petition under certain circumstances. When the claim in the amended petition arose out of the conduct,

---

**10.** We note that, in its brief, A.G. Edwards & Sons states that it is not requesting a new trial on Overlap's claim for breach of the original software license agreement, which the jury assessed damages of $22,278. Because the juror nondisclosure occurred from the inception of the proceeding, it tainted the entire proceeding. Moreover, Overlap's claims are all intertwined and resulted in the circuit court merging the compensatory dam-

ages into a single compensatory damage award during the first trial. We, therefore, reverse the circuit court's judgment as to all claims, including Overlap's unfair competition claim on which the circuit court directed a verdict, and remand for a new trial on all claims.

**11.** *See* section 516.120, RSMo 2000.

transaction, or occurrence set forth in the original pleading, the amended petition relates back to the date of the original pleading. Rule 55.33(c). Further, an amendment changing the party against whom a claim is asserted relates back if the party to be brought in: (1) has received adequate notice so that the party will not be prejudiced in maintaining the party's defense on the merits; and (2) "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." *Id.* "In other words, for Rule 55.33(c) to allow amended pleadings filed out of time to relate back, the plaintiff must have sued the wrong party." *Mallek v. First Banc Insurors Agency,* 220 S.W.3d 324, 331 (Mo.App.2007). Moreover, Rule 55.33(c) is "to be liberally applied, and is based on the concept of whether a defendant has been given notice sufficient to defend against claims relating to a particular transaction or occurrence." *Thompson v. Brown & Williamson Tobacco Corp.,* 207 S.W.3d 76, 116 (Mo.App. 2006).

In *Watson v. E.W. Bliss Co.,* 704 S.W.2d 667, 670 (Mo. banc 1986), the Missouri Supreme Court considered and reaffirmed the rule that correction of a misnomer relates back to the original petition as long as the correct defendant had notice of the original lawsuit. In *Watson,* like here, the plaintiff mistakenly identified the corporate entity in the original complaint ("E.W. Bliss Company, Gulf & Western Heavy Duty Division") and then, as in this case, sought to add the correct defendant ("E. W. Bliss Division of the Gulf Western Manufacturing Company"). *Id.* at 666–69. The *Watson* court said:

> Using an objective standard, it is reasonable to conclude plaintiff sought to sue the corporate entity liable for his injuries—the company which manufactured the punch press, or the successor

to its business. He did designate the defendant in his initial pleading as "E.W. Bliss Company." But, he used a name which Gulf & Western Manufacturing Company now uses to describe a portion of its business. There is a striking similarity between plaintiff's originally described defendant: "E.W. Bliss Company, Gulf & Western Heavy–Duty Division" and defendant's designation of the proper defendant: E.W. Bliss Division, Gulf & Western Manufacturing Company. Plaintiff's description of the defendant never centered or focused solely on the corporate name of Old Bliss or New Bliss. Viewed in the light of the corporate history of the Old Bliss punch press manufacturing business, plaintiff's misdescription was understandable. Gulf & Western Manufacturing Company uses the name of E.W. Bliss for its own purposes. It should not be heard to object when sued in that name. Plaintiff simply was mistaken in describing defendant.

*Id.* at 669. As in this case, there was no credible dispute that the correctly named defendant received notice of the timely filed original petition. *Id.* Accordingly, the Missouri Supreme Court held that the relation back doctrine applied and found the correction related back to the original petition. *Id.* at 670.

In *Watson,* the Missouri Supreme Court made clear that where a petition is filed mistakenly against the wrong corporate entity, but the correct party is named in an amended petition, there is no "change" in party under Rule 55.33(c). *Id.* at 669–70. If the correct party received notice, the correction relates back to the filing of the original petition. *Id.* at 670. Indeed, the *Watson* court emphatically stated that the correction of a misnomer or misdescription of a party has nothing to do with Rule 55.33(c)'s requirements concerning a

change in party. *Id.* The court stated: "The misnomer theory existed long before ... our present Rule 55.33(c). The theory is still conceptually sound and, on balance, not difficult to apply. Its vitality and effectiveness have served us well in the past, and we see no reason to change or discard it." *Id.* at 671.[12] Thus, Overlap's amendment naming A.G. Edwards & Sons as a defendant relates back to the original filing of Overlap's petition because A.G. Edwards & Sons was indisputably on notice of the original petition. *Id.* at 670–71.

■ " 'Statutes of limitation were never intended to be used as swords. Rather, they are shields, primarily designed to assure fairness to defendants by prohibiting stale claims' which tend 'to undermine the truth finding process.' " *Thorson v. Connelly*, 248 S.W.3d 592, 596 (Mo. banc 2008) (citation omitted). The truth-finding process is not undermined by allowing the process to proceed against A.G. Edwards & Sons. A.G. Edwards & Sons suffers no prejudice or unfair surprise as it knew from the beginning what Overlap's claims were, and it was not deprived of the opportunity to investigate and prepare its defenses. *Id.*

The circuit court did not err in submitting Overlap's claims to the jury. Overlap's claims are not barred by the five-year statutes of limitation. Overlap's amendment naming A.G. Edwards & Sons as a defendant related back to the original filing of Overlap's petition, and, therefore, was filed within the applicable statutes of limitation.

## CONCLUSION

We conclude that Overlap's claims are not barred by the five-year statutes of limitation. Because, however, a juror intentionally failed to disclose that he had been a party to a lawsuit, the circuit court erred in denying A.G. Edwards & Sons' motion for new trial. We, therefore, reverse the circuit court's judgment as to all claims, including Overlap's unfair competition claim on which the circuit court directed a verdict, and remand for a new trial on all claims.[13]

All concur.

12. In support of its contention that the amended petition does not relate back to the date of the filing of the original petition, A.G. Edwards & Sons relies on *Tyson v. Dixon*, 859 S.W.2d 758 (Mo.App.1993). In *Tyson*, this court ruled that an amendment of a petition does not relate back to the date of the original filing in a case where the plaintiff had notice before the running of the statute that the party in question was a potential defendant. *Id.* at 762. In so ruling, the *Tyson* court relied on Rule 55.33(c) and said: "Rule 55.33(c) was not designed to afford protection to a plaintiff who had notice of the *identity* and *potential liability* of the proper party defendant before the statute of limitations expired, yet failed to timely bring the party into the action. The amendment attempting to add Defendant Dixon to the suit was not a correction of a 'mistake' as to the identity of the proper party defendant as contemplated by Rule 55.33(c)." *Id.* at 763. *Tyson* is not a misnomer case and did not involve a mistake of identity of a closely related corporate entity. *Tyson*, therefore, is not instructive to this case.

13. In several of A.G. Edwards & Sons' Points Relied On, A.G. Edwards & Sons argues that it was entitled to a directed verdict or judgment notwithstanding the verdict on Overlap's claims. Contrary to A.G. Edwards' arguments, Overlap proved a submissible fraud claim, which is sufficient to sustain both the compensatory and punitive damages awards. Accordingly, A.G. Edwards is not presently entitled to the entry of judgment in its favor.

Because we are remanding for a new trial and submissibility issues may arise on a different factual record in the event of a verdict for Overlap on retrial, an extended discussion of these issues is not warranted here. As to the remaining issues, because we are remanding for a new trial, we need not address those issues.